## GEO. CRUMP *et al.* v. STATE.

No. A-1239.  Opinion Filed June 22, 1912.

(124 Pac. 632.)

1. **WITNESSES — Courts — Privilege of Accused—Appeal—Jurisdiction—Objections—Exceptions.** (a) It is improper for the prosecuting attorney to make a demand upon the defendant or his attorneys in a criminal case, in the presence of a jury who are trying him, to produce a deed or any document referred to containing evidence tending to incriminate the defendant. **Gillespie v. State,** 5 Okla. Cr. 547, 115 Pac. 620, 35 L. R. A. (N. S.) 1171, reaffirmed.

(b) To bring before this court on appeal errors of law occurring during the trial, unless they be jurisdictional, they must be objected to when made and incorporated in the motion for a new trial and thereby submitted to the determination of the trial court, and the action of the trial court thereon must be excepted to and brought before us by proper assignments in the petition in error.

(c) Except in cases of habeas corpus and other special proceedings authorized by statute, the jurisdiction of this court is appellate only.

2. **TRIAL—Argument—Failure to Produce Evidence.** Upon the trial of a criminal case, where it is shown that material evidence is within the control of or accessible to a defendant and which is not accessible to the state, and such defendant fails to produce such evidence or to account for its nonproduction, the presumption is that the evidence, if produced, would have incriminated the defendant, and this is a proper subject for argument on the part of the prosecution.

3. **FORGERY—Evidence—Sufficiency.** For evidence which fully sustains a conviction for forgery, see opinion.

(Syllabus by the Court.)

*Appeal from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

George Crump and Thomas Wright were convicted of forgery, and appeal. Affirmed.

*A. M. Fowler* and *S. P. Freeling,* for appellants.

*Smith C. Matson,* Asst. Atty. Gen., *C. P. Holt,* Co. Atty., and *Hunter Johnson,* Asst. Co. Atty., for the State.

FURMAN, P. J.   First. When the witness Rachel Barnett was upon the stand, and after she had testified that she had never sold the land in question or executed a deed of any kind to Claud Gallagher or any person to said land, the record then proceeds as follows:

"Mr. Holt: Counsel for the state at this time request counsel for the defendant to produce for the use of the state in this case the original deed made to Claud Gallagher, purported to be made by Rachel Barnett to the land just described in the last question, and also the deed purported to have been made by Claud Gallagher to George Crump, Jr., covering the same land. I mean the original deeds. The Court: Have you these deeds in your possession? Mr. Freeling: We have not. The Court: Proceed. Mr. Holt: The state offers in evidence Exhibit A, and also the state offers in evidence Exhibit B, after both have been examined by counsel for the defendant."

It is insisted in the brief of counsel for appellants that this conduct of the county attorney was equivalent to demanding in the presence of the jury that the appellants should furnish the deed in question, and that it was an attempt on the part of the state to force the appellants to furnish testimony against themselves, and they rely upon the case of *Gillespie v. State*, 5 Okla. Cr. 546, 115 Pac. 620, 35 L. R. A. (N. S.) 1171, to sustain their contention. We still adhere to the views expressed in the Gillespie case, and if counsel for appellants had objected to this demand at the time it was made and had incorporated this matter in their motion for a new trial, so as to give the trial court an opportunity to correct the error, we would feel compelled to set aside this verdict and grant appellants a new trial. But the record shows that counsel for appellants did not complain to the trial court or preserve this question in the record for presentation to this court. In Gillespie's case the rights of the defendant were all preserved by proper objections and exceptions at the time and also in the motion for a new trial. Counsel for appellants at the trial of this case evidently did not regard this as a serious matter. They not only did not object and except to this demand, and thereby reserve it for review by this court, but they disclaimed having the deed in their possession, and the matter was

passed as being of no importance. Errors which go to the jurisdiction of the court may be raised for the first time upon appeal, or in fact at any time by *habeas corpus* proceedings before the final completion of execution of the judgment and sentence of the trial court.

In the case of *Ledgerwood v. State,* 6 Okla. Cr. 105, 116 Pac. 202, this court said:

"But, in order to bring before us on appeal errors of law alleged to have occurred during the trial, they must be incorporated in the motion for a new trial, and thereby submitted to the determination of the trial court, and the action of the trial court thereon excepted to and then brought before us by proper assignments in the petition in error. As we understand the law, the correct rule of procedure in matters of this kind is stated by Mr. Justice Kane of our Supreme Court in the case of *Stinchcomb v. Myers,* 28 Okla. 597, 115 Pac. 602, which is as follows: 'It has long been the settled rule of practice in this court that errors occurring during the trial cannot be considered by the Supreme Court, unless a motion for a new trial, founded upon and including such errors, has been made by the complaining party and acted upon by the trial court, and its ruling excepted to, and afterwards assigned for error in the Supreme Court. *Beall v. Mutual Life Ins. Co. of N. Y.,* 7 Okla. 285, 54 Pac. 474; *Glaser et al. v. Glaser et al.,* 13 Okla. 389, 74 Pac. 944; *Bradford v. Brennan et al.,* 15 Okla. 47, 78 Pac. 387.' "

In the case of *Gritts v. State,* 6 Okla. Cr. 534, 118 Pac. 673, 120 Pac. 669, this court held that, where evidence was admitted upon the trial without objection, it is too late upon appeal to complain of the introduction of such evidence.

We are therefore of the opinion that by failing to object and except at the proper time, and by failing to incorporate this matter in the motion for a new trial, and thereby submit it to the determination of the trial court, appellants have waived their rights in the premises, and it is now too late for them to invoke the aid of this court. Our jurisdiction is appellate only, except in cases of *habeas corpus* and other special proceedings authorized by law.

Second. It is made to appear in the record that, during the closing argument, the county attorney called attention to the

fact that appellants did not introduce the original deed which was alleged to be forged, and claimed, in substance, that if the deed had been produced by the appellants, personal examination would have enabled the jury to determine as to whether or not it was genuine or was a forgery. We think that this argument on the part of the county attorney was proper. The deed had been traced to the possession of the appellants. It was proven upon the trial that the state's witness Rachel Barnett could write, and if this deed had been produced, the signature to the deed could have been compared with the signature of the said Rachel Barnett. If genuine, this controversy would have been settled there; but appellants did not see fit to produce this deed or make any explanation of its nonproduction. Where the record shows that a defendant upon trial has access to or control of testimony, which, if true, would be beneficial to him, and he fails to produce such testimony or to account for its nonproduction, such failure is a proper subject for argument on the part of the prosecution, and if inferences unfavorable to the defendant arise from such nonproduction, the defendant has no one but himself to blame. See *Rhea v. Territory*, 3 Okla. Cr. 230, 105 Pac. 314. See, also, *Hampton v. State, infra,* 123 Pac. 571.

Third. We have carefully examined all of the propositions submitted in the brief of counsel for appellants in connection with the record, and we fail to find where any material error was committed. A careful examination of all of the evidence in the case leaves no room to doubt the guilt of these appellants of the crime of forgery as charged. The offense occurred in the city of Shawnee, in Pottawatomie county, upon Saturday, June 26, 1909. The persons involved in the immediate occurrence were the two defendants, a notary public by the name of Walter Gray, a negro man named Sanders Sanko, and an unknown negro woman. At about dusk of the day of the offense, the notary, Walter Gray, was stopped upon the corner of Main street and Union avenue in the city of Shawnee, and introduced by one Hutchinson, a pool hall man, to the appellants, and informed that the appellants wanted some notary work done.

The notary crossed the street to his office, accompanied by the two appellants and the two negroes, none of whom he had ever seen before. At the office the lights were turned on, and the appellant Wright introduced the negro woman to the notary as Rachel Barnett, with the request that he take the acknowledgment of the woman to a deed. The woman then signed the name of Rachel Barnett to the deed alleged in the indictment to have been forged, and acknowledged it before the notary; and the appellants and the negroes left the office. No money passed in the presence of the notary, and nothing was said in his hearing about the details of the transaction. These things occurred upon Saturday, and upon the following Monday the white people for whom Rachel Barnett at the time was working as a domestic discovered that the deed had been filed of record in Seminole county, and immediately and upon that day took Rachel Barnett before the notary, Gray. With the occurrence fresh in his mind, Gray was positive that Rachel Barnett was not the woman who had appeared before him on Saturday night and executed the deed. Gray immediately got in touch with the appellants and wrote the appellant Wright at Wewoka, telling him that something was wrong about the deal, and that he had better come up and straighten it up. Within the week Wright went to Shawnee, and was taken by Gray to see Messrs. Chisum and Longmire, the white employers of Rachel Barnett, and was then told by Gray that it was not Rachel Barnett who had appeared before him and executed the deed. The white friends of Rachel Barnett demanded of Wright a quitclaim to the land involved, which Wright then promised. Chisum prepared the quitclaim deed, which Wright promised to have executed and returned to Chisum that afternoon, and which he did not do. Not only was the land not quitclaimed to Rachel Barnett, but on July 12, 1909, sixteen days after the alleged forgery and within a few days of the above conversation with Chisum, the grantee in the forged deed, Claud Gallagher, executed his deed to the appellant Crump, conveying to Crump the land involved in this case, and in Crump that title rested at the time of the trial so far as this record is concerned. The appellants had full ability

to right the wrong that had been done, if the deed was a forgery, and if they were innocent participants. They did nothing. They were indicted upon July 20, 1909. The deed from Gallagher to Crump was not filed of record until November 5, 1909, more than four months after the forgery and nearly as long after their indictment. They still claimed the fruits of the wrong that had been done, and at a former trial of this case these appellants both took the stand in their own behalf and testified that the deed was a valid transaction, and that Rachel Barnett did appear before Gray and execute it, and that she was the same woman who testified against them. This was on June 21, 1910. This attitude of the appellants, there being no scintillâ of evidence of a contrary tendency in this record, the appellant Crump having testified at the former trial that he was acquainted with Rachel Barnett, removes all reasonable possibility of an innocent participation by these appellants in the forgery, if forgery there was. Was there a forgery? The prosecuting witness, Rachel Barnett, testified that she did not execute the deed in question; that she never had any transaction with either of the appellants, or with Gallagher, or with Sanko, with reference to her land; that she never appeared before the notary on June 26, 1909, and signed or acknowledged the deed in question, and did not appear before Gray for any other purpose, and never saw Gray until after the deed was made; and that she was the owner of the land in question, which had been allotted to her as a freedwoman citizen of the Seminole Tribe of Indians, by the United States.

The notary, Gray, testified that Rachel Barnett was not the woman who appeared before him with these appellants and executed and acknowledged the deed as Rachel Barnett on June 26, 1909; and that the woman who did so appear before him was a woman of an entirely different description. This witness, who was an important witness for the state, and who had testified for the state in the first trial of this case on June 21, 1910, testified that, after the first trial and prior to the last trial of this case, he (witness) had a conversation with appellant Crump

in the town of Wewoka, in which witness told Crump that he was thinking of leaving Shawnee, and that the state was about to put him under bond to appear as a witness for the state in this case, and the appellant Crump said to witness that that would be all right, that they would make witness a straw bond so that he need not appear.

The state also introduced in evidence certified copies of the two deeds already mentioned, as well as of the record of the receipt of these deeds in the office of the register of deeds of Seminole county. The deed, alleged to have been forged, purported to be from Rachel Barnett, as grantor, to Claud Gallagher, as grantee, for a consideration of $2,000, and to convey the 120-acre allotment of Rachel Barnett, was filed for record on June 28, 1909, and was received from the appellant Crump, and later was delivered to the appellant Wright. The deed from Gallagher to Crump purported to convey by warranty deed the allotment of Rachel Barnett for a consideration of $2,250, under date of July 12, 1909, and was filed for record by the defendant Crump on November 5, 1909, and later was delivered to him. The original of the deed alleged to have been forged was not in evidence. It was shown by the evidence to have been in possession of the appellants. That possession is presumed to continue till the contrary is shown. Its absence was not accounted for. The signature of the woman who executed the forged deed was in her own handwriting. Rachel Barnett signed her own name. She was on the witness stand at the trial. If the original deed had been produced, if the deed were not a forgery, a comparison of the signature to it with the handwriting of Rachel Barnett would have been the best proof of either its genuineness or falsity, as the case might have been. The bringing of this proof into the case was in the power of the appellants, and, when they failed to avail themselves of it, a strong presumption of fact arose that, if it had been produced, the comparison would have been unfavorable to the appellants; in other words, that the comparison would have been even stronger proof for the state than the already strong proof introduced. The very laws

of nature, which prompt even the worm in the dust to fight back, would have impelled these defendants to produce this evidence, and they have written their condemnation into this record by their failure so to do.

The above statement of facts is taken from the evidence of the state. The evidence of the defense shows hardly an attempt at successful contradiction of the facts shown by the state. The defense placed upon the stand only two witnesses, A. M. Fowler and M. L. Boyd. The first of these testified that there was no pool hall man in the town of Wewoka by the name of Clark. This had small bearing upon the case. The second, Boyd, testified that during the month of December, 1909, six months after the alleged forgery, and nearly six months after Rachel Barnett had gone before the grand jury of Pottawatomie county and procured the indictment of these appellants for the forgery, and started proceedings to recover her land, Rachel Barnett told witness that she had sold her land to the defendant Crump, that he had not paid her for it, that she could not lease the land to witness because of the sale to Crump, and that if Crump did not pay her she would lease to witness. This testimony bears upon its face a contradiction to human nature. The idea that the prosecuting witness, while seeking to recover her land and while prosecuting these appellants for the forgery of the deed of June 26, 1909, would make a statement of this kind in reference to her land, is not logical; it would cause one to stop and consider this testimony, and then reconsider it, and to regard it with suspicion. The witness was shown to have been well acquainted with both appellants and to have been a business partner of one of the appellants. His cross-examination, followed by his contrary testimony as given at the former trial of this case, as testified to by the court stenographer, was a successful impeachment, and would be so received by any reasonable jury. Rachel Barnett testified that she made no such statement to Boyd. The testimony of Boyd was in no way a successful impeachment of the testimony of Rachel Barnett; and this was the only evidence offered by the appellants to contradict

the case made by the state. Another strong circumstance against appellants is their failure to place Claud Gallagher, the grantee in the deed alleged to have been forged, upon the witness stand, or to account for their failure to do so. If Gallagher was a *bona fide* person and this was an honest transaction, his testimony would have materially assisted appellants.

The state proved every material allegation in the indictment by the direct positive testimony of two witnesses, Rachel Barnett and Walter Gray, the latter of whom is wholly disinterested. This testimony is corroborated by every circumstance, presumption, and probability of the case, as gathered from the other evidence. It is not impeached. The actual events of the case are undisputed. The result already attained is the only one that could come from the honest deliberations of reasonable men. The jury could not have reasonably reached any other verdict than the one rendered. The verdict is the conclusion of reason, and, with or without any imperfection that may exist in the record, could not have been otherwise. While the appellants themselves did not forge the deed in question, yet they evidently procured it to be done. Our statute makes all persons who are concerned in the commission of an offense equally guilty as principals. See section 2045, Comp. Laws 1909.

With such a record as this we would not be justified in reversing a conviction except for the most serious errors. We find none such in the record. The judgment of the lower court is in all things affirmed.

ARMSTRONG and DOYLE, JJ., concur.