## J. ORLANDO MITCHELL v. STATE.

No. A-958.    Opinion Filed July 13, 1912.

(124 Pac. 1112.)

1.    APPEAL—Review—Presenting Question in Trial Court. (a) Where the record shows that the regular judge is disqualified and that a special judge has been selected by the parties and sworn and has presided at the trial, the form of the oath administered to such special judge cannot for the first time be questioned upon appeal.

    (b)    Only those questions can be considered upon appeal, unless jurisdictional, which were decided adversely to the appellant in the trial court.

2.    SAME — Construction of Penal Statutes — Presumptions on Appeal—Duties of Prosecuting Officers.    (a) The common-law doctrines of a strict construction of penal statutes and that error presumes injury have no place in the criminal jurisprudence of Oklahoma.    On the contrary, penal statutes in this state are liberally construed in furtherance of justice and for the purpose of enabling them to reach and destroy the evils at which they are aimed, and no case should be reversed upon appeal on any technicality or exception unless it appears from the record that thereby the appellant was deprived of a substantial right to his injury.

    (b)    County attorneys and all other officers of the state of Oklahoma should exercise the utmost diligence in the prosecution of persons who commit perjury, in order that it may become as dangerous to criminals as it is odious to reason and ruinous to justice.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County;*
*W. J. Sullivan, Special Judge.*

J. Orlando Mitchell was convicted of perjury, and appeals. Affirmed.

Appellant was convicted in the district court of Muskogee county for the offense of perjury, and his punishment was assessed by the jury at confinement ·in the penitentiary for the period of ten years.

In substance and effect the information in this case charged that appellant had testified falsely in a civil suit pending in the district court of Muskogee county as to the execution of a certain deed to a tract of land described in said deed.    The charg-

ing part of the information touching this matter is as follows:

"The said J. Orlando Mitchell did then and there, on his oath so as aforesaid taken, falsely, corruptly, knowingly, willfully, feloniously, and contrary to such oath, state and testify in substance that the deed exhibited to him was the deed executed by Tony Harred and Mary Harred to Maud Mitchell and which was acknowledged by the said Tony Harred and Mary Harred before J. M. Morton as notary public. And that the said Toney Harred and Mary Harred did sign said deed and did acknowledge the same before the said J. M. Morton as notary public. And that said deed was delivered to him by the said Tony Harred and Mary Harred for the said Maud Mitchell. Whereas, in truth and in fact the said Tony Harred and Mary Harred had not signed or executed said deed, and said Tony Harred and Mary Harred had not in fact acknowledged the execution of said deed before said J. M. Morton as notary public or any other officer, and that said J. Orlando Mitchell then and there well knew that the said Tony Harred and Mary Harred had not signed or executed said deed before J. M. Morton as notary public. And the said false statements so upon oath made by him, the said J. Orlando Mitchell, were material to the questions and matters then and there in issue before the said court and jury."

Omitting mere formal matters, the testimony relating directly to the guilt of appellant may be stated as follows:

George H. Leslie testified that he was the official stenographer of the district court of Muskogee county and held this position in June, 1909; that he acted as such stenographer in the trial of the case of Tony Harred et al. v. Maud Mitchell et al.; that appellant was one of the defendants and testified at the trial of said cause that Tony Harred and his wife executed the deed in question in his presence; that appellant was sworn as a witness at the time by the deputy district clerk.

Ross Houck testified that he was deputy clerk of the district court of Muskogee county; that he was present at the trial of the case in which the perjury is alleged to have been committed; that he swore the witnesses in the case; and that appellant testified as one of the witnesses, and he heard appellant testify that the deed in question was executed in his presence by the parties whose names were attached thereto.

Hon. John H. King testified that he was judge of the district court of Muskogee county; that he presided at the trial of the case in said court in which it is alleged the perjury charged in this case was committed; that appellant was a witness on said trial and testified that the deed in question was executed in his presence by the parties whose names were signed thereto.

Toney Harred testified that he was a freedman citizen of the Creek Nation, and as such freedman citizen he owned certain lands in said Nation; that the witness had not executed the deed which was charged to have been forged, and did not authorize any other person to sign his name to said deed; that the witness could not write and never signed his name in his life; that he did not touch the pen and make a mark when any other person signed said deed; that the witness had had a lawsuit about some land with Maud Mitchell and appellant in the district court of Muskogee county; that witness had never leased his land to appellant. One of the jurors interrogated the witness as follows:

"Q. Tony, did you ever touch the pen for any paper for Mitchell? A. No, sir; never did. Q. Neither at your home nor in town? A. No, sir. Juror: That is all."

Mary Harred testified that she was the wife of Tony Harred; that appellant came to her house and talked about buying the land in question, and her husband told appellant he did not want to sell it; that the papers were fixed up and no sale was made; witness did not sign any paper for Mitchell or for any one else; that witness cannot write; that witness knows nothing about the deed in question; that she never signed it or authorized any one to sign it for her either at this time or anywhere else; witness was never in the office of appellant; that witness never saw appellant from the time appellant was at her house until she saw him in court when they had the trial about the matter.

George K. Davidson testified that he lives in Muskogee; that he is acquainted with the appellant and also with the state's witness, Tony Harred; that he went with appellant to the house of Tony Harred; that appellant desired to purchase some land from Tony Harred, but no sale was made; that Tony Harred

and his wife refused to sell the land and no deed was executed. The witness then testified as follows:

"Q. I hand you an instrument marked 'State Exhibit C. No. 649,' and ask you to look at that. Can you read and write? A. Yes, sir. Q. Is your name signed to that deed? A. Yes, sir. Q. As a witness? A. Yes, sir. Q. Did you ever see that deed before? A. Yes, sir. Q. Where was the first time you saw it? A. The first time I saw it when I signed as a witness. Q. The first time you ever saw that instrument? A. It was in Mitchell's office the first time I ever saw it. Q. J. Orlando Mitchell's office? A. Yes, sir. Q. George, did Tony Harred sign that deed you have there in your hand? A. No, sir. Mr. Haskell: We object. By the Court: Objection overruled. Mr. Haskell: The defendant excepts. Q. Were you present when that deed was executed? A. I was present when we signed as witnesses, but they were not there. Q. Who was not there? A. Tony Harred and Mary Harred. Q. Who was there? A. Morton, Mitchell and myself. Q. Where was that deed signed? A. In Mitchell's office. Mr. Haskell: If the court please, Mr. Owen is trying to avoid the ruling of the court, he is trying to prove it was a forgery. Mr. De Graffenreid: The purpose of this testimony is to corroborate the statements of old man Harred and his wife that they never signed this deed, and we are permitted certainly to show by this witness that he saw the deed executed, saw the deed signed with Mary Harred and Tony Harred's name to it; that they didn't sign it, and that Mitchell knew they didn't sign it; that is the material issue in this case, and that Mitchell knew that fact when he testified to it in the district court. Now, if Mitchell was present and saw it signed, then he knew it was not signed by them. By the Court: I will say by the way I think we can save time, my understanding of this line of questions is not on the question of the forgery by Mitchell but on the question of Mitchell's perjury as to the signature of the deed. Mr. Owen: Yes, sir; and, before the jury is authorized to convict, we must first prove he really saw the deed executed, then we must prove that the deed was not executed, and then that Mitchell knew when he swore it that it was not executed. By the Court: I will overrule the objection, and if it doesn't come up to the information I will so instruct the jury. Q. George, name all the persons present when that deed was executed. Mr. Haskell: We object. By the Court: Objection overruled. Mr. Haskell: The defendant excepts. A. Morton, Mitchell, and myself. Q. You mean J. Orlando Mitchell. A. Yes, sir. Q. Was Tony Harred and

Mary Harred either there? A. No, sir. Mr. Haskell: We object. By the Court: Objection overruled. Mr. Haskell: The defendant excepts. Q. Who signed Tony Harred and Mary Harred's names to the deed? Mr. Haskell: We object. By the Court: Objection overruled. Mr. Haskell: The defendant excepts. A. Mr. Morton. Q. Was J. Orlando Mitchell present? A. Yes, sir. Q. At the time Morton signed Tony Harred and Mary Harred's names in the presence of Mitchell, was Tony and Mary there? A. No, sir. Q. So far as you know they authorized or directed that their names be signed to that deed? A. Not as I know of. Q. Were you present at Tony's house when he and J. Orlando Mitchell talked about the land? A. Yes, sir. Q. Did he at that time, or did Mary at that time, agree or authorize that their names be signed to any deed? A. No, sir. Q. Were you present when the civil suit was brought to cancel that deed? A. Yes, sir; I was present. Q. Were you in the court room? A. Yes, sir. Q. Was J. Orlando Mitchell a witness at that trial? A. Yes, sir. Q. Did you hear what he said about the execution of that deed as to who executed it? A. I think I did. Q. What did he say about it? A. Why he said we were out there twice, and that he paid them some money. Q. Out where? A. Out to Tony Harred's house. Q. Who did he say was out there? A. Mr. Morton and he and myself. Q. Did you hear him testify that? A. Yes, sir. Q. Was that true or not? A. It was not true. Q. Who was the judge at the trial of that case? A. Judge King. Q. Where was that, in what county did he testify to that? A. Muskogee county. Q. That is all."

The appellant offered no testimony.

*Kistler & Haskell,* for appellant.

*Smith C. Matson* and *E. G. Spilman,* Asst. Attys. Gen., for the State.

FURMAN, P. J. (after stating the facts as above). The first proposition submitted in the brief of counsel for appellant is that the oath administered to the special judge who presided at the trial of this cause is not in compliance with the Constitution and laws of the United States, which requires all state judges to be sworn to support the Constitution of the United States. Our Constitution is to the same effect. See Williams' Const. sec. 315.

The record upon this subject is as follows:

"State of Oklahoma v. J. Orlando Mitchell.   No. 649.

"Now on this day comes the state by its attorney, and comes also the defendant in person and by his attorney, and said defendant being arraigned is served with a copy of the information and list of witnesses indorsed thereon, and says his correct name is J. Orlando Mitchell, and now said defendant waives time to plead and for his plea herein says that he is not guilty, as charged in the information, and the presiding judge being disqualified, by agreement of parties W. J. Sullivan, Esq., an attorney at this bar, is selected to preside as judge at the trial of this case.   And now said W. J. Sullivan is now duly sworn in open court.   Said oath, together with the indorsement therein, is in words and figures as follows, to wit:

"In the District Court for the Third Judicial District of Oklahoma, Muskogee County.

"State of Oklahoma, Plaintiff, v. J. Orlando Mitchell, Defendant.   No. 649.

"I, W. J. Sullivan, do solemnly swear that I will well and faithfully perform the duties of special judge in the above entitled and numbered cause to the best of my ability, so help me God.                                              W. J. Sullivan.

"Subscribed and sworn to before me this 23d day of May, 1910.

[Seal]          W. P. Miller,
                    "Clerk District Court.
                    "By Ross Houck, Deputy.

"Endorsed:   No. 649.   State of Oklahoma v. Orlando Mitchell.   Oath of Special Judge.   State of Oklahoma, County of Muskogee.   Filed May 23, 1910.   W. P. Miller, District Clerk.

"Said oath having been taken in the presence of the defendant.

"And this cause being now called for trial, and both sides having announced ready for trial, a jury is called to try this case and comes as follows; the defendant being present in person."

A further examination of the record discloses the fact that appellant did not attempt to raise this question in the court below.   He was present in open court and was represented by able and experienced counsel who were also present when the oath was administered, and they knew exactly what it contained and did not interpose any objection to it at any time during the trial.   An elaborate motion for a new trial was filed in which

22 grounds were urged upon which the judgment of the court should be set aside. This motion for a new trial does not contain any reference to the question now presented. In their brief, counsel have not cited a single authority holding that the omission of which they now complain constitutes reversible error. Knowing as we do the industry, learning, zeal and ability of counsel for appellant, we would be disposed to regard this failure on their part to cite authority in support of their contention as an admission that no such authority exists. But we will not act upon this assumption. The question now presented raises the issue of the sufficiency of the oath administered. We do not deem it necessary at this time to discuss this question, because the record affirmatively shows that the trial judge was both selected and sworn. We do not think that the form of the oath administered to a special judge is a jurisdictional question and can therefore be raised for the first time upon appeal. Whatever objections appellant may have been able to offer to the form of this oath were waived by his failure to present them at the proper time. Except in matters specially provided for by statute, our jurisdiction is appellate only, and we cannot pass upon irregularities which are not jurisdictional unless they were first presented in the trial court. Only those questions can be considered upon appeal, unless jurisdictional, which were decided adversely to the appellant in the trial court. It would be fatal to the administration of justice if we were to permit counsel for a defendant to acquiesce in an irregularity occurring during the trial when a timely objection would have cured the irregularity and prevented the possibility of injury, and raise such question for the first time in this court.

Second. Appellant's counsel have displayed great learning and industry in the brief which they have filed in this court, covering as it does 61 pages. In this brief they discuss a number of questions and cite innumerable authorities to sustain their contention. It is unfortunate for appellant that a purely technical defense is not available in this state. From the day of its creation, this court has refused to recognize and follow the common-

law doctrines that error presumes injury and that penal statutes are to be strictly construed. On the contrary, it is now settled in this state that, where the record shows that an appellant has been fairly tried and his guilt is clearly made out by the testimony, a verdict of conviction will not be set aside upon any technicality or exception which did not deprive the appellant of a substantial right to his injury, and that such injury will not be presumed but must reasonably appear from the record. It is also equally well established that penal statutes should be liberally construed in the furtherance of justice and for the purpose of enabling them to reach and destroy the evils at which they are aimed. It is therefore a waste of time for counsel to cite authorities from states which differ so radically from the fundamental principles upon which our system of criminal jurisprudence is based. This court has not undertaken any radical innovation upon the law, but is simply carrying out in good faith the statute law of this state, which we are sworn to enforce. We have quoted these statutes so often that it should be unnecessary to refer to them again, but as attorneys for appellants persist in filing briefs in this court which directly ignore the law of the state, we will call the attention of the bar to these statutes again.

Section 6487, Comp. Laws 1909, is as follows:

"The rule of common law that penal statutes are to be strictly construed, has no application to this chapter. This chapter establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice."

Section 6957 is as follows:

"On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

If attorneys, in preparing their cases for appeal, would keep these two statutes constantly in mind, they would save themselves a great deal of unnecessary labor, and their services would be more valuable to their clients. It is simply a waste of time and · labor to discuss questions on appeal which do not go to the

substantial merits of a case, and the overcrowded condition of our docket prohibits us from taking part in such discussions. Nothing can be gained thereby. We already have more work on our hands than we can possibly do in deciding questions which involve substantial merit. In the case at bar the state's testimony made out a plain and direct case of perjury, to which no meritorious defense has been made. The jury accepted the testimony of the state as true. This was their exclusive prerogative. So far as the merits of the case are concerned, appellant might just as well have pleaded guilty. Even if we were to sustain all of the contentions of counsel for appellant, it could do him no possible good, because there are no fundamental errors in this record.

As the verdict rendered is the only one which could have been rendered by the jury, we cannot say that the appellant has been deprived of any substantial right to his injury. Our views on the subject of perjury are fully expressed in the case of *Coleman v. State,* 6 Okla. Cr. 252, 118 Pac. 594, and it is not necessary that we should repeat here what we said there, as we have no desire to recall or modify the views then expressed. We again call upon county attorneys and all other officers of the state to exercise the utmost diligence in prosecuting persons for perjury, in order that it may become as dangerous to criminals as it is odious to reason and ruinous to justice.

We find no material error in the record, and, as the testimony clearly established the guilt of appellant, the judgment of the lower court is in all things affirmed.

ARMSTRONG and DOYLE, JJ., concur.