DAVID ORR McNEILL v. STATE.

No. A-3147—Opinion Filed Sept. 18, 1920.

(192 Pac. 256.)

(Syllabus.)

1. **WITNESSES—Defendant as Witness.** A defendant, offering himself as a witness, vouches for his competency, and subjects himself to all the rules of evidence governing other witnesses.

2. **APPEAL AND ERROR—Review—Necessity for Prejudicial Error.** Only those questions can be considered upon appeal, unless jurisdictional, which were decided adversely to the appellant in the trial court.

3. **SAME—Cure of Error by Instruction.** The error, if any, in striking certain evidence from the consideration of the jury, is cured by a subsequent instruction that the jury should consider same.

4. **EVIDENCE—Opinions of Nonexperts—Insanity.** On a trial for murder, where insanity is interposed as a defense, a nonexpert witness, after testifying to the acts, conduct, and appearance of the defendant, may state whether such acts, conduct and appearance impressed him as being rational or irrational.

5. **CRIMINAL LAW—Test of Criminal Responsibility—Insanity —Appeal—Review of Instructions.** The test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the accused has mental capacity to distinguish between right and wrong as applied to the

particular act, and to understand the nature and consequences of such act, and, where defendant wholly fails to meet this burden, in order to be acquitted on the ground of insanity, he cannot be heard to complain of any alleged errors in the instructions of the trial court on the question of insanity.

*Appeal from District Court, Beaver County;*
*W. C. Crow, Judge.*

David Orr McNeill was convicted of murder, and he appeals. Affirmed.

This is an appeal from the district court of Beaver county, wherein the defendant was charged by information with the murder of one Anson D. Green, in said county, on the 20th day of October, 1916. A trial by jury at the March, 1917, term of said court resulted in a verdict of guilty, and the punishment assessed at imprisonment in the state penitentiary at hard labor for life.

The killing occurred on Main street, in the town of Forgan, between the hours of 1 and 2 o'clock in the afternoon of the 20th day of October, 1916. Deceased and defendant had for some time, up until about two years prior to the commission of the homicide, lived on adjoining farms in Beaver county, and at the time of the commission of the homicide and for several years previous thereto ill feeling existed between them. About two years before the commission of the homicide deceased had left Beaver county, and had gone to the state of California where he resided. He came back to Beaver county, the evidence discloses, about a week before he was killed, for the purpose of looking after some business matters for his father, who then lived in the town of Liberal, Kansas.

On the day before the commission of the homicide de-

fendant left his farm, southwest of the town of Forgan, and drove a team hitched to a farm wagon into Forgan, where he stayed all night, and all morning of the 20th of October, 1916. Deceased came into the town of Forgan about noon of said day, having driven from Beaver City with some friends in an automobile. Deceased ate dinner at a restaurant in Forgan, and after dinner transacted some business at the bank and at some mercantile establishments. Defendant had learned that deceased was in Forgan, and a short time prior to the commission of the homicide had passed him a time or two on the public streets of said town.

The homicide occurred at the northwest corner of the crossing of the two main streets in Forgan. Deceased was traveling west along the main street and defendant east. Defendant passed deceased to the south, and when he had taken a step or two east of deceased he drew his pistol from scabbard in which he carried it near his shoulder, and immediately turned upon deceased and shot him in the back. Defendant fired in all five shots, two of which were fired into the body of deceased after he had fallen to the ground.

According to the testimony of the state's witnesses, deceased was doing nothing except walking along the public sidewalk at the time he was killed. He made no demonstration of hostility whatever toward defendant, but was shot down without warning, in a cruel manner.

The defense interposed was insanity. However, defendant took the witness stand in his own behalf, and testified that he shot deceased in self-defense, stating that deceased made a demonstration with his left hand to at-

tack defendant as he passed deceased, and that defendant thought his life was in danger, and shot deceased for that reason. All the eyewitnesses to the tragedy contradict defendant as to the manner in which the homicide was committed.

Defendant introduced several alienists, who testified that he belonged to the type of insane persons known as paranoiacs; that he was subject to delusions of persecutions; but upon cross-examination, in response to questions asked as to whether defendant at the time knew right from wrong, the alienists testified that defendant knew right from wrong, and could understand the consequences of his act.

The state in rebuttal introduced several nonexpert witnesses, who had known defendant ever since he came to that country 12 or 14 years before the commission of the homicide, who testified that they had observed defendant in his various walks of life, had had business transactions with him, and that in their opinion he was sane.

The defense of self-defense interposed by defendant was abandoned, counsel relying solely upon the defense of insanity, which defense was fully covered by the court's instructions. The various assignments of error relied upon for reversal will be treated in the opinion of the court, which follows.

*William A. Briggs,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *E. L. Fulton,* Asst. Atty. Gen., for the State.

MATSON, J. It is first contended that the court er-

red in excluding certain competent evidence offered by de-
fendant. Alleged evidence which it is contended the court
erred in excluding was sought to be elicited from defend-
ant. In the brief of counsel for defendant it is stated that
defendant was not placed upon the witness stand "to pre-
sent the material, competent, and relevant facts surround-
ing the homicide, but for the sole and only purpose of
demonstrating the fact that defendant was insane." In
other words, it is contended here that the defendant was
placed in evidence in the nature rather of an exhibit than
as a witness, and that for such reason the ordinary rules
of evidence should not be applied to his examination, but
that the court should have permitted him to testify *ad
libitum* to anything which came to his mind or which was
called to his attention by counsel.

The law of this state is that persons of unsound mind
at the time of their production as witnesses are incom-
petent to testify. Section 5050, Revised Laws 1910. Also,
the defendant at his own request, and not otherwise, may
become a witness in his own behalf.

Furthermore, a defendant offering himself as a wit-
ness subjects himself to all the rules of evidence govern-
ing other witnesses. *State v. King,* 67 Wash. 651, 122
Pac. 323; *State v. Mattivi,* 39 Utah, 334, 117 Pac. 31;
*Smith v. State,* 14 Okla. Cr. 348, 171 Pac. 341.

When the defendant offered himself as a witness in
this case he vouched for his competency, and he was sub-
ject to the same rules governing his testimony as those
which would apply to any other witness in the case. His
competency as a witness was not attacked in the trial court,
and defendant cannot be heard to complain in this court

that the trial court applied the ordinary rules of evidence in its rulings upon the admissibility of his testimony.

We have carefully examined the record in connection with the alleged erroneous rulings of the court in excluding offered evidence, and find that the trial court was very liberal and favorable to defendant in ruling upon the admissibility of evidence, and, if any error was committed by the trial court, the error was against the state and in favor of defendant in that the trial court permitted evidence to go before the jury which was clearly incompetent and immaterial, and had no bearing whatever upon the issue of the guilt or innocence of this defendant.

Measured by the rules of evidence applicable to competent witnesses, the rulings of the trial court in excluding proffered testimony in this case were not erroneous.

It is also contended that defendant was prejudiced by certain remarks of the trial court made throughout the progress of the trial and in the presence of the jury.

We have examined the record carefully with reference of the numerous alleged remarks of the court which are quoted in the brief of counsel who now represents defendant. No objection was made to any of these remarks in the trial court. The remarks were made in response to inquiries by counsel for defendant, and were in reply to arguments of counsel for defendant as to the admissibility of certain evidence. The remarks were certainly not considered prejudicial in the trial court, or else objection would have been made and a request directed to the court

to admonish the jury not to consider them. This was not done.

In the case of *Mitchell v. State,* 7 Okla. Cr. 563, 124 Pac. 1112, it is held:

"Only those questions can be considered upon appeal, less jurisdictional, which were decided adversely to the pellant in the trial court."

As no objection was made to the various remarks of the trial court complained of, or request that the court instruct the jury not to consider the same, and a ruling on such request adverse to this defendant, there is no question presented for review by this court under this assignment of error.

It is also contended that the trial court erred in sustaining the motion of the state to strike from the record the testimony of M. L. McNeill, a brother of defendant, to the effect that defendant had another brother, who was at one time confined in an insane asylum at Topeka, Kansas,

The record relative to this assignment of error discloses that the witness M. L. McNeill was permitted to testify that defendant had had a brother who was confined in an asylum in the state of Kansas. On motion by the state this evidence was stricken from the consideration of the jury, but later, after the defendant had introduced other evidence in his behalf, the court, upon motion of defendant's counsel, withdrew his ruling concerning this evidence, and specifically instructed the jury to consider same. The alleged error, therefore, if any was committed, was cured by the subsequent ruling of the trial court in permitting such evidence to go before the jury.

It is also contended that the trial court erred in permitting certain nonexpert witnesses for the state in rebuttal to express their opinion as to the sanity of defendant. The objection here urged is that no proper predicate was laid as a foundation for this testimony.

We think this assignment of error to be without merit. Each of the witnesses testified that they had lived neighbors to defendant for a number of years, had observed him in his everyday walks of life, had had business dealings with him, had observed his manner of doing business, had conversed with him on various topics, had observed his appearence and conduct, and were then permitted to express an opinion that defendant was of sound mind. The ruling of the trial court permitting such witnesses, after stating the facts, to express such an opinion, is sustained by the decision of the Supreme Court of the territory of Oklahoma in the case of *Queenan v. Terr.*, 11 Okla. 261, 71 Pac. 218, 61 L. R. A. 324, wherein it is held:

"On a trial for murder, where insanity is interposed as a defense, a nonexpert witness, after testifying to the acts, conduct, and appearance of the defendant, may state whether such acts, conduct, and appearance impressed him as being rational or irrational."

It is also contended that the court erred in giving certain instructions to the jury on the question of insanity.

While we find no material error in any of the instructions given which would in any way prejudice the defendant had the defense of insanity been supported by competent evidence, yet in this case, in view of the fact that the expert witnesses for defendant testified that at the time of the commission of the homicide the defendant knew right from wrong, we are of the opinion that the burden placed

upon defendant to introduce evidence sufficient to raise in the minds of the jury a reasonable doubt of his sanity was not met in this case.

In the recent case of *Mary F. Roe v. State*, 191 Pac. 1048 (No. A-3242), 17 Okla. Cr. 587, this court held:

"Under subdivisions 4 of section 2094, Rev. Laws 1910, the test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the accused has mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act."

The defendant, having wholly failed to meet by competent evidence the burden which the law places upon him to raise a reasonable doubt of his sanity before he is entitled to be acquitted on the ground of insanity, cannot be heard to complain of any alleged errors in the instructions of the trial court on the question of insanity in this case.

We have carefully reviewed the record in connection with all the assignments of error relied upon for a reversal of this judgment. The evidence discloses a willful, deliberate, and, in our opinion, a premeditated taking of human life, without apparent justification or excuse. The defendant was extremely fortunate that the jury did not assess against him the death penalty. He had a fair and impartial trial according to the forms of law. He had eminent counsel to represent him, both in the trial court and in this court. Having been justly convicted, fairly tried, and ably represented, he must suffer the consequences of his act.

The judgment of conviction is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.