## NOAH LANGLEY v. STATE.

No. A-8242. April 23, 1932.
Rehearing Denied June 18, 1932.
(12 Pac. [2d] 254.)

402

Jno. L. Ward, Preston S. Davis, and Roy S. Sherry, for plaintiff in error.

J. Berry King, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county of manslaughter in the first degree, and his punishment fixed at 25 years in the state penitentiary.

On the early morning of December 27, 1930, defendant shot and killed one T. D. Wright. Just before daylight on that morning, defendant, a police officer of several years' experience, who also carried a commission as a deputy sheriff, with two other officers, Stubblefield and Burrows, went to the residence of Wright, about a mile

outside the Tulsa city limits. Wright and his wife occupied one room, a brother-in-law Thompson and his wife another room, and one Bayne was sleeping on a divan in still another room. Defendant and his fellow officers knocked and were admitted by Bayne, who informed them Wright was in the adjoining bedroom. They went in where Wright was, and one of them said they wanted a drink. Wright got up, dressed, and they told Mrs. Wright they wanted her to prepare the drinks, and went into the kitchen. Wright procured a bottle of whisky, and his wife prepared three drinks each for the defendant and his companions. Soon Burrows, Bayne, Mrs. Wright, and Mrs. Thompson left the premises. There is some conflict as to just what was done after that, but the evidence for the state shows that Stubblefield became intoxicated and laid down upon the divan. Defendant was either sick or intoxicated and was put to bed in the room lately occupied by Wright. Soon afterwards Bayne returned and shortly after the shooting followed. The killing is admitted, but there is a wide divergence in the testimony for the state and for the defendant. In substance, the state contends that defendant conceived the notion that some money had been taken from him and accused deceased of taking it, demanded its return; that deceased protested that he had not taken any money from him, and that thereupon defendant shot and killed him while he was wholly unarmed and protesting his innocence. Defendant contends he went to the Wright premises for the purpose of attempting to locate some fugitive criminals he had been informed would be at this place early in the morning. He admitted he and his fellow officers went into the house as shown by the testimony; that they went into the Wright bedroom, thence to the kitchen; that the toddies were made by Mrs. Wright; that Stubble-

field did become intoxicated, but that defendant did not drink the toddies prepared for him, but merely touched them to his lips. Defendant denies he was put to bed, but testified he was seated in a chair, with his hat and overcoat on as if asleep. That deceased came where he was, reached inside of defendant's vest, and was taking the money when defendant seized him. That deceased jerked loose, drew a pistol, and snapped it at him, and he then fired in self-defense. That deceased again snapped the pistol, and defendant continued to fire until deceased fell to the floor. That defendant then took the pistol of deceased and kept it in his possession until Sunday, although he was placed in jail on Saturday.

It is argued at length that the evidence is insufficient. An examination of this contention discloses it is directed to the credibility of the witnesses and the weight and value of the testimony rather than to a lack of evidence. The testimony of Bayne, Thompson and of Raus, who lived nearby, who testified he came into the back door of the house just as the shooting began, fully sustains the state's theory. The decisions of this court, while stated in different language, are practically uniform that the credibility of the witnesses and the weight and value of the testimony is peculiarly within the province of the jury, and, when there is a direct contradiction between witnesses, it is for the jury to determine which they will believe. They may believe the testimony of one witness upon a state of facts as against several testifying to a contrary state of facts. In this case, although defendant was a peace officer of many years' standing, the jury evidently believed the testimony of witnesses for the state and not the defendant. Ordinarily the determination of the jury upon a question of fact supported by evidence will be sustained. Remillard v. State, 10 Okla. Cr. 438, 133 Pac.

1132, 137 Pac. 370; Flowers v. State, 12 Okla. Cr. 320, 155 Pac. 904; Queen v. State, 35 Okla. Cr. 414, 250 Pac. 935; Sanders v. State, 46 Okla. Cr. 293, 287 Pac. 846.

This does not conflict with the further holding of this court, in substance, that the evidence is insufficient, if there is no substantial testimony tending to show guilt or where the evidence is so weak and inconclusive that a conclusion of guilt may not reasonably be drawn from it, or that it indicates the jury must have acted from partiality, passion, or prejudice. Brown v. State, 3 Okla. Cr. 42, 104 Pac. 78; Jefferson v. State, 31 Okla. Cr. 44, 236 Pac. 914; Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507.

Complaint is next made that the court erred in admitting incompetent testimony for the state and in rejecting competent testimony offered by defendant. This assignment is directed to various items of testimony in the record. In one instance, defendant's witness, Chief of Police Marrs, had testified he saw defendant in jail soon after the homicide, and that he was not intoxicated. He was asked on cross-examination if his purpose in going to the jail was not to take up defendant's commission as an officer. This was objected to, and the question was not answered. Defendant contends the asking of this question indicated to the jury the opinion of the chief of police. As another item, defendant on cross-examination was asked if, when Chief Marrs came to the jail and asked him about the case, he did not refuse to tell him. Defendant answered: "I didn't tell him anything to amount to anything." Then defendant was asked if Marrs, in substance, did not say to him, if he would tell him what happened, he would assist him, and if defendant did not answer he had nothing to say and would not talk until he had talked to his lawyer. The court sus-

tained an objection to this and instructed the jury to disregard it. The county attorney then said: "* * * That is competent as it can be." No exception was taken to this statement. The point is made that a defendant in a criminal case is not called upon to contradict statements prejudicial to him, but has the right to remain silent, and the fact that he did not contradict statements implying guilt is not admissible in evidence against him. This is a sound rule fully supported by the authorities. Ellis v. State, 8 Okla. Cr. 522, 128 Pac. 1095, 43 L. R. A. (N. S.) 811; Cumpton v. City of Muskogee, 23 Okla. Cr. 412, 225 Pac. 562; Mackey v. State, 30 Okla. Cr. 31, 234 Pac. 782.

An examination of the record as to the various items convinces us that they are without substantial merit. In most instances, no objections to the questions were made, or, if made, were generally sustained. There may be errors in a few instances, but they are not material.

Argument is also directed to the admission of certain acts and statements of Stubblefield who was jointly charged with defendant. Under the testimony, Stubblefield and Burrows were acting in conjunction with defendant, and while so acting their acts and statements would be admissible. With few exceptions the testimony shows all the acts or statements of Stubblefield were in the presence of defendant.

Under the third assignment, we are pressed with the argument that there is error in the court's instruction No. 8. This instruction is a definition of premeditated design and malice aforethought. The substance of this charge has been approved in several cases. See 13 R. C. L. p. 763, § 73 f. This charge relates to the crime of murder. Defendant was convicted of manslaughter. The error, if any, is harmless. Byars v. State, 7 Okla. Cr. 650, 126

Pac. 252; Duncan v. State, 11 Okla. Cr. 217, 144 Pac. 629; Littleton v. State, 19 Okla. Cr. 461, 200 Pac. 716.

Some argument is made that the court erred in failing to sustain a challenge for cause to the juror Kerr. No authorities are cited, and an examination of the record convinces us that it is without merit. Complaint is also made of a statement of the court during the impaneling of the jury in saying: "I am saying that because I want to give you a fair chance to get the jury, and then if you cannot get it, I will get the jury. Go ahead." The court at the time stated this remark was directed to both counsel for the state and counsel for defendant; no exception was taken.

It is urged that the court erred in not admonishing the jury in full at each recess of the court, as required by section 2717, Comp. St. 1921, not to form or express any opinion until the case should finally be submitted. There was no request for any additional admonition, nor any objection or exception at the time. Having acquiesced in the admonition given by the court by failure to object, defendant will not now be heard to complain. Yarbrough v. State, 13 Okla. Cr. 140, 162 Pac. 678; Sanders v. State, 46 Okla. Cr. 298, 287 Pac. 842.

In the reply brief, plaintiff in error seeks to present an additional claim of error not before raised either by a motion for a new trial, in the petition in error, nor in the brief. This claim is that the jury by lot arrived at that part of the verdict by which they reported a disagreement as to the punishment and left the same to the court. Defendant asserts:

"* * * That shortly after the verdict was returned in this case and the jury discharged, that a persistent rumor was afloat to the effect that the jury had arrived at the

verdict returned by a gamble and a chance, by the flipping or tossing of a coin. * * *"

Counsel follow this up by stating they were unable to get any definite information upon this until April 6, 1932, when they procured two affidavits from jurors. The originals of these affidavits are attached to the reply brief. These affidavits state that:

"* * * The jury arrived by ballot in the usual way at the guilt of defendant of manslaughter in the first degree. * * *"

Then it is stated that they were unable to agree upon the punishment and finally did agree that they would toss a coin and in this manner would determine if the punishment would be left to the court or would be fixed at a minimum of four years. We must determine if this question can be raised for the first time in this court. The Criminal Court of Appeals is, as its name implies, with a few exceptions a court of review, with appellate jurisdiction only. Article 7, § 2, Const.; chapter 10 (sections 3037-3055) and section 423, Comp. St. 1921; Crump v. State, 7 Okla. Cr. 535, 124 Pac. 632; In re Talley, 4 Okla. Cr. 398, 112 Pac. 36, 31 L. R. A. (N. S.) 805. In cases appealed invoking the appellate jurisdiction of this court and raising questions other than those going to the jurisdiction of the court, it does not have the power to hear additional evidence or to consider questions unless decided adversely to the appellant and presented to the lower court by motion for a new trial and assigned as error in this court. Ledgerwood v. State, 6 Okla. Cr. 105, 116 Pac. 202; Mitchell v. State, 7 Okla. Cr. 563, 124 Pac. 1112; Dew v. State, 11 Okla. Cr. 581, 149 Pac. 917; Brashears et al. v. State, 38 Okla. Cr. 175, 259 Pac. 665; Whittington v. State, 51 Okla. Cr. 333, 1 Pac. (2d) 840.

A jurisdictional question may be raised at any time, before or after trial, in a motion in arrest of judgment, or even for the first time in this court. Gibbons v. Territory, 5 Okla. Cr. 212, 115 Pac. 129, 130; Crump v. State, supra; Morrison v. State, 37 Okla. Cr. 359, 258 Pac. 1050. The matter sought to be presented in the reply brief is not jurisdictional. It does not challenge the validity of the verdict finding defendant guilty of manslaughter, but only that part of the verdict reporting a disagreement on the punishment. It discloses the jury had in fact disagreed as to the punishment. It also discloses that defendant knew of the rumor and did not in his motion for a new trial or by supplemental motion set up this ground in the trial and summon the jurors before the court to ascertain the truth of the rumor. This court is without power to entertain the objection raised in this manner.

We have examined the record of this case with care. The case was closely tried both by counsel for the state and counsel for defendant. The trial judge was uniformly fair in his rulings; the record is clean and free from any substantial error. No reason why this court should disturb the judgment is made to appear.

The case is affirmed.

CHAPPELL, J., concurs. DAVENPORT, P. J., not participating.