IRA BROWN v. STATE.

No. 223.    Opinion Filed October 2, 1909.

(104 Pac. 78.)

1.    **ASSAULT AND BATTERY—Assault With Deadly Weapon—Sufficiency of Evidence.** Upon the trial of an indictment charging an assault with a deadly weapon, to wit, a knife, without any description of the knife, and where the proof fails to show the kind or character of the knife, or that the wounds inflicted thereby would likely produce death, and where the evidence that was offered in regard to the weapon repels the idea that the knife was a deadly weapon, a new trial should be granted on the motion of the defendant alleging the insufficiency of the evidence to sustain the verdict of the jury.

2.    **ASSAULT AND BATTERY—Assault With Deadly Weapon—Statutes.** Sess. Laws 1901, p. 108. c. 13, art. 1, entitled "Assault with intent to kill," embraces several species of offense, all punishable alike, yet different in description and degrees, as in some of the offenses denounced therein a conviction may be had of a lesser degree or misdemeanor, while under the last offense denounced therein there are no lesser degrees.

3.  **APPEAL AND ERROR—Review—Questions of Fact.** Where the evidence in a case to sustain a verdict of guilty is of such a weak and uncertain character that the court cannot say that the jury was not influenced by prejudice, passion, or irrelevant and incompetent testimony, a great deal of such testimony appearing in the record, this court will order a new trial.

(Syllabus by the Court.)

*Appeal from District Court, Kay County; W. M. Bowles, Judge.*

Ira Brown was convicted of an assault with a deadly weapon, and he appeals. Reversed, with directions to grant a new trial.

The plaintiff in error, Ira Brown, was tried and convicted of the offense of assault with a deadly weapon, and upon said conviction was sentenced by the court to serve a term of seven years in the state prison. From such judgment and sentence he appeals.

Judge Doyle being of counsel for the defendant in the trial of this cause below, was disqualified to sit in this cause in this court, and the fact having been duly certified to the Governor, as provided for by law, C. R. Buckner, of Guthrie, Okla., was duly commissioned by the Governor to sit in this case as special judge.

*Cress & Carter,* for plaintiff in error.
*C. J. West,* Atty. Gen., for defendant in error.

BUCKNER, SPECIAL JUDGE, (after stating the facts as above). The plaintiff in error was prosecuted by indictment for the offense of an assault with a deadly weapon upon the person of one Horton. The statute (Sess. Laws 1901, p. 108, c. 13, art. 1), under which the prosecution was conducted reads as follows:

"Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, air gun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process is punishable by imprisonment in the territorial prison not exceeding ten years."

The indictment charges that the defendant and others, naming them, "unlawfully, knowingly, willfully, intentionally, wrong-

fully, and feloniously, with certain knives, the same then and there being deadly weapons, which they then and there in their hands had and held, commit an assault and battery on one John Horton and they, the said Ira Brown, Roy Temple, and Vick Minnick, with the said knives held in their hands as aforesaid, then and there at and against and into the head and face and against and into divers other parts of the body and person of him, the said John Horton, with said knives, so held in their hands as aforesaid, did strike, cut, and wound, as aforesaid, the head, face, body, and person of him, the said John Horton, with the felonious intent then and there and thereby, he, the said John Horton, unlawfully, knowingly, willfully, intentionally, wrongfully, and feloniously to kill." To this indictment a severance of trial was taken, and the plaintiff in error, Ira Brown, was separately tried and convicted.

The above statute embraces several species of offense, punishable alike, yet different both in description and degree, as appears in some of the offenses denounced a person may be convicted of a lesser degree or misdemeanor, while under the last offense there are no degrees. The defendant by the indictment in this case is charged with a violation of that species of the offense the elements of which are an assault and battery upon another by means of a deadly weapon, or by other means of force likely to produce death. The language of the indictment is that "defendants with certain knives, the same being deadly weapons, which they then and there in their hands had and held, commit an assault and battery on one John Horton," etc. An ordinary pen-knife is not necessarily a deadly weapon. A witness' testimony is no stronger than it is made on his cross-examination. *Kopf v. Monroe Stone Co.*, 133 Mich. 296, 95 N. W. 72. The prosecuting witness, Horton, testified, in answer to a question concerning the assault and battery, as follows:

"No; here is where he struck me first [indicating], and after that he broke his knife blade, and I had on a thin shirt, and of course he struck me with the blunt end of the knife blade and made this scar."

Troup, the next witness for the state, was a night watchman at Ponca City, the scene of the affray, and the only testimony given by him relative to the assault was that he saw Horton after the alleged assault at the depot, and that Horton was bleeding. The next witness for the state was Dr. Roberson, who testified that he was called to see Horton; that Horton was bleeding a good deal when he reached him, and described the wounds of Horton as follows: That Horton had a wound on the face and on the hand, and a small cut on the breast and possibly another on the arm. When asked if the wounds would be apt to cause death, he said that that depended on a good many circumstances. They might, or they might not, according to circumstances. When asked if there was a probability that they might, answered that they could, and in describing the wounds said the one on the wing of the nose was about an inch to an inch and a half in length, and was quite deep, almost through the lip; the one on the hand he said was not deep, and the one on the breast was very shallow, only through the skin. On cross-examination the doctor stated that the wounds in and of themselves could not produce death. The next witness for the state, Brilley, did not testify to anything relative to the weapon used or the wounds received. The only other witness, Reeves, testified to Horton being at his home after the affray. Under this evidence it cannot be said, either as a matter of law or matter of fact, that a knife with the blade broken off is a deadly weapon. *Evins v. State*, 46 Ala. 88. There is no evidence as to the size of the knife, or the length of the broken blade. The evidence shows that the wounds inflicted by the knife were slight, and not of a serious nature. There being no proof in the record of the deadly character of the weapon, and such proof as was offered repelling the idea that the weapon was deadly, dangerous, or likely to produce death, the motion of the plaintiff in error based on the ground of the insufficiency of the evidence to sustain the verdict, should have been granted. *Key v. State,* 12 Tex. App. 506.

The plaintiff in error complains that the verdict of the jury is not sustained by the evidence, and this court is not unmindful of the rule that appellate courts should not disturb verdicts of

juries in cases where there is a conflict in the evidence, and especially where the verdict has been approved by the trial judge upon a motion for a new trial; yet where the evidence in the case to sustain the verdict is of such weak and uncertain character that the court cannot say that the jury was not misled by irrelevant and illegal testimony appearing in the record, and did not act upon prejudice or passion, this court will order a new trial. *Drury v. Territory,* 9 Okla. 398, 60 Pac. 101. We have examined the evidence in this case, and find it very weak and uncertain, and on this evidence the defendant was sentenced by the court to serve a period of seven years in the state prison. He is a young man, having a family, and as far as the record discloses has always borne a good character. There is no evidence whatever, except the testimony of the prosecuting witness, that the defendant committed the crime charged. On the other side, the evidence is most convincing that he did not, at least, taking the testimony as a whole, it is so uncertain as to raise a reasonable doubt. Okla. St. 1893, § 5201; *Ratzky v. People,* 29 N. Y. 124. And such a severe sentence should not be permitted to stand on such weak evidence.

The case involves the identity of the defendant by the prosecuting witness. The evidence shows that the prosecuting witness is nearly blind; he was a stranger in Ponca City; does not claim to have ever known the defendant; says that he met him for the first time in a saloon a few minutes before he was assaulted. His testimony is as follows: That he was assaulted by three persons, and that those persons were Brown, Temple, and Minnick; that he saw these three persons in Daley's saloon just before the assault; that one of them paid for a cigar for him; that after that he left the saloon to go to the depot; and that these three persons came out of the saloon, followed him, and assaulted him. He testifies positively that the assault was made at half past 11 o'clock that night; that he first saw defendant, Brown, in Daley's saloon that night about half past 10 o'clock, getting along towards 11 o'clock. Further on he testifies that he did not go into Daley's saloon that night until 11 o'clock, and that he remained in the saloon 15 or 20 minutes before leaving for the depot, on which

mission he claims to have been assaulted. The manner of the witness in answering questions shows that he was not frank. As against this testimony the evidence of other witnesses shows that Temple was tending bar in Daley's saloon that night, and that the saloon was kept open until 12 o'clock that night, and that Temple could not have been one of the parties who made the assault. Besides this William Collins testified that he saw Horton uptown the night of the assault, and saw Horton on the way to the depot just prior to the assault; that he (Collins) was stopping at a feed-yard near the place of the assault; and that he saw Horton and some other person walking together towards the depot; and that there was only one person with Horton; and that he knew Brown; and that it was not Brown with Horton. Other witnesses testified to seeing Horton on the streets taking up collections at the time he claimed he was loitering in the saloon of Daley. Both Temple and Brown testify that Brown was not in Daley's saloon on the day of the assault after 4 o'clock in the afternoon of that day. Both Brown and Temple deny that they made the assault. Troup, a witness for the state, said that he met defendant, Brown, on the night of the assault in company with a man named Thomas, and that Brown and Thomas had a drunken man in their possession, and that this was between 11 and 12 o'clock that night, and that he took the drunken man and put him in jail; that he looked at his watch when he put the man in jail, and it was then just half past 11 o'clock. Thomas corroborates this statement, and says that after they turned the drunken man over to Troup he and Brown came back to town, and separated on a corner; that just as they separated a man named Cravens came up, and that Cravens and Brown went away together. Cravens testified that he met Brown and Thomas at the place stated by Thomas where they turned the drunken man over to Officer Troup. Cravens then says that he and Brown went home together; that on the way they met Brown's wife, father, and mother; that they all then went back to Brown's father's house; and that he thought it was about 11 o'clock.

Lee Brown testifies that he took Mrs. Ira Brown and three

young ladies to the shows that night; that they returned home about 11 o'clock that night; that after they reached home he and his wife and Ira's wife started up to the defendant's house; and that on the way they met Cravens and the defendant; and that they with the defendant then all returned to his home and stayed there that night. Ollie Brown testified that she would judge it was about 10 o'clock when they left the shows uptown, and corroborated Lee Brown as to meeting Cravens and her husband. Malinda Brown testified that her husband and Ira's wife and the three young ladies returned home from the shows between 10 and 11, and that when Ira Brown came that night, he and his wife stayed all night with them, and that he came between 10 and 11 o'clock. Geo. Cripe testified that he saw Horton uptown on the streets 8 or 10 minutes before the assault. Ira Brown testified that he went home with Cravens, and reached there about 11 o'clock.

The motion for a new trial was based upon newly discovered evidence, among other grounds, and in support of this ground the defendant filed the affidavits of E. H. Irwin and Wm. Alderman, to the effect that on the night of the assault they came in town from the country, and in doing so passed the place of the assault as described by the prosecuting witness; that when they reached this place it was 11 or half past 11 o'clock, and at the place of the assault they saw several negroes quarreling; that they passed by, and did not see any assault committed. The evidence in the case discloses that the prosecuting witness is a negro. This newly discovered testimony is not cumulative of any other testimony in the case, and, in view of the defense made by defendant, is material; and it is probable that with this testimony, when considered with the other testimony by a jury, the verdict might be different, and for this reason a new trial should have been granted.

The case will be reversed, with directions to grant the plaintiff in error a new trial. The clerk of the Criminal Court of Appeals will issue an order to the superintendent of the state penitentiary at McAlester to deliver the prisoner to the sheriff of Kay county,

Okla., and that said sheriff shall detain the said prisoner in custody subject to the order of the district court of Kay county, Okla.

FURMAN, Presiding Judge, and OWEN, Judge, concur.