PETE MARTIN v. STATE.

No. A-9488. Sept. 22, 1939.

(94 P. 2d 270.)

Falkenstine & Fisher, of Watonga, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Nelson Crow, Co. Atty., of Watonga, for the State.

BAREFOOT, J. Defendant was charged by information filed in Blaine county, with the crime of "assault and battery with a deadly weapon with intent to kill"; was tried, convicted, and sentenced to serve a term of four years in the penitentiary, and has appealed.

The facts in this case are that defendant resided near the town of Longdale, in Blaine county. On the night of June 26, 1937, he entered the restaurant of Bob McClaren, and was drinking beer. Some party, whose name the record does not disclose, with a lady companion, was sitting in a booth, and was approached by defendant. An altercation arose, and defendant was knocked down. The proprietor, Bob McClaren, came from the kitchen and got between the parties, and the city marshal, Oscar Phillips, came in the restaurant, and at the request of the proprietor, took charge of defendant and started with him to the city jail. Another man, by the name of Parmenter, who claimed to be an officer, but who was not a witness in the case, accompanied them. When at or near the jail defendant broke away from the prosecuting witness and ran back in front of the Hutton Drug Store.

There is a conflict in the testimony as to why he broke away, the defendant testifying that the prosecuting witness hit him over the head with his "billy", and

the city marshal saying that he did not do so, but that he ran without cause. The marshal, Oscar Phillips, followed defendant to the front of the drug store, and defendant was standing behind several parties, asking them not to let the officers "get him," or "hit him." There is a direct conflict in the testimony as to what occurred at this time. The prosecuting witness and several others testified that when the city marshal took defendant by the arm to return him to the city jail, defendant immediately struck Phillips, the city marshal, and that blood flowed. The defendant and others testified that the prosecuting witness first struck defendant with his "billy," and knocked him down. As a result the prosecuting witness was cut at three different places, once on his body, his arm, and his leg. The defendant was struck on the head from ten to twenty times with the "billy," and both parties were taken to the same doctor at Canton, a nearby town, and their wounds dressed. They were both confined to their homes for a period of four or five days.

Several errors are assigned, and we are of the opinion that they may all be considered together, and in a general way. It is contended that there was error in the admission of certain evidence; that certain instructions were erroneous, and that the evidence was insufficient to sustain the verdict, and that the punishment assessed by the jury was excessive, and was the result of passion and prejudice.

The information in this case was based upon Oklahoma Statutes, 1931, section 1873, Okla. Stats. Anno. title 21, sec. 652, which is as follows:

"Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any

legal process is punishable by imprisonment in the penitentiary not exceeding ten years."

In compliance with many decisions of this court, the trial court also submitted to the jury, as an included offense, a charge under Oklahoma Statutes 1931, sec. 1870, Okla. Stats. Anno., title 21, sec. 645, which is as follows:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

And also under the assault and battery statute, Oklahoma Statutes 1931, secs. 1865, 1866, and 1868, Okla. Stats. Anno., title 21, secs. 641, 642, and 644, respectively, as follows:

"An assault is any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another."

"A battery is any willful and unlawful use of force or violence upon the person of another."

"Assault, or assault and battery, shall be punishable by imprisonment in a county jail not exceeding thirty days, or by a fine of not less than five dollars or more than one hundred dollars, or both, at the discretion of the court."

The verdict of the jury finding defendant guilty under the first charge was as follows:

"We the jury, impaneled and sworn to try the issues in the above entitled cause, do upon our oaths, find the defendant guilty of assault and battery by means of a deadly weapon, with intent to kill, as charged in the

information, and assess his punishment at imprisonment in the state penitentiary, for a term of 4 years."

From a reading of the above statute, Oklahoma Statutes 1931, sec. 1873, Okla. Stats. Anno., title 21, sec. 652, it will be noted that it is divided into four distinct parts. It is the violation of the second part of this section with which defendant was charged, and convicted, it says:

"* * * or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death." Gober v. State, 25 Okla. Cr. 145, 219 P. 173.

Under the decisions of this court it has been universally held that to sustain a conviction under this clause of this section, it is necessary for the state to prove that the instrument used was a deadly weapon, or that the wounds inflicted would likely produce death. This does not mean that they could produce death if complications were allowed to arise.

In the case of Brown v. State, 3 Okla. Cr. 42, 104 P. 78, 79, the court quotes the indictment, as follows:

"* * * unlawfully, knowingly, willfully, intentionally, wrongfully, and feloniously, with certain knives, the same then and there being deadly weapons, which they then and there in their hands had and held, commit an assault and battery on one John Horton, and they, the said Ira Brown, Roy Temple, and Vick Minnick, with the said knives held in their hands as aforesaid, then and there at and against and into the head and face and against and into divers other parts of the body and person of him, the said John Horton, with said knives, so held in their hands as aforesaid, did strike, cut, and wound, as aforesaid, the head, face, body, and person of him, the said John Horton, with the felonious intent then and there and thereby, he, the said John Horton, unlawfully, knowingly, willfully, intentionally, wrongfully, and feloniously to kill."

This indictment is practically the same as in the instant case. The court further said:

"The above statute embraces several species of offense, punishable alike, yet different both in description and degree, as appears in some of the offenses denounced a person may be convicted of a lesser degree of misdemeanor, while under the last offense there are no degrees. The defendant by the indictment in this case is charged with a violation of that species of the offense the elements of which are an assault and battery upon another by means of a deadly weapon, or by other means or force likely to produce death. The language of the indictment is that 'defendants with certain knives, the same being deadly weapons, which they then and there in their hands had and held, commit an assault and battery upon one John Horton,' etc. An ordinary penknife is not necessarily a deadly weapon. A witness' testimony is no stronger than it is made on his cross-examination. Kopf v. Monroe Stone Co., 133 Mich. [286] 296, 95 N. W. 72. The prosecuting witness, Horton, testified, in answer to a question concerning the assault and battery, as follows:

" 'No; here is where he struck me first (indicating), and after that he broke his knife blade, and I had on a thin shirt, and of course he struck me with the blunt end of the knife blade and made this scar.' "

The court then discusses the evidence which is very similar to the evidence in the case at bar, and says:

"Under this evidence it cannot be said, either as a matter of law or matter of fact, that a knife with the blade broken off is a deadly weapon. Evins v. State, 46 Ala. 88. There is no evidence as to the size of the knife, or the length of the broken blade. The evidence shows that the wounds inflicted by the knife were slight, and not of a serious nature. There being no proof in the record of the deadly character of the weapon, and such proof as was offered repelling the idea that the weapon was deadly, dangerous, or likely to produce death, the motion of the plaintiff in error based on the ground of the insufficiency of the evidence to sustain the verdict, should have been granted. Key v. State, 12 Tex. App. 506.

"The plaintiff in error complains that the verdict of the jury is not sustained by the evidence, and this court is not unmindful of the rule that appellate courts should

not disturb verdicts of juries in cases where there is a conflict in the evidence, and especially where the verdict has been approved by the trial judge upon a motion for a new trial; yet where the evidence in the case to sustain the verdict is of such weak and uncertain character that the court cannot say that the jury was not misled by irrelevant and illegal testimony appearing in the record, and did not act upon prejudice or passion, this court will order a new trial. Drury v. Territory, 9 Okla. 398, 60 P. 101. We have examined the evidence in this case, and find it very weak and uncertain, and on this evidence the defendant was sentenced by the court to serve a period of seven years in the state prison. He is a young man, having a family, and as far as the record discloses has always borne a good character. There is no evidence whatever, except the testimony of the prosecuting witness, that the defendant committed the crime charged. On the other side, the evidence is most convincing that he did not, at least, taking the testimony as a whole, it is so uncertain as to raise a reasonable doubt. Okla. St. 1893, § 5201, 22 Okla. St. Ann. § 836; Ratzky v. People, 29 N. Y. 124. And such a severe sentence should not be permitted to stand on such weak evidence."

The evidence in this case is not only very conflicting, but also shows that the prosecuting witness had been found by a jury in the county court of Payne county to be insane. This verdict was set aside, but the record does not disclose for what reason. The motion to set it aside raises several jurisdictional grounds, and it is not shown by the record why it was set aside. But the evidence of many citizens from the community where the prosecuting witness resided revealed that he was a high strung, quarrelsome and highly excitable man, and several swore to his bad reputation as an officer, and the evidence of his actions on the night of the difficulty with defendant easily bears this out. The defendant's conduct is not to be commended. The evidence shows that he had been drinking beer at the time it was attempted to arrest him, but no one testified that he was drunk. The party with whom he had the controversy at the restaurant was a stranger, and no doubt left immediately, and

was not present at the trial, and no one knew his name. Even if the prosecuting witness had the right to arrest the defendant, there was very little use of placing him in jail if he was not drunk. He lived in the community and was well known. No doubt he could have easily posted a bond for his appearance. He could have only been charged with a misdemeanor. But the evidence reveals that the prosecuting witness had placed him in jail before, and that no charge had been filed against him, and the evidence justifies the belief that the actions of the marshal were not such as a careful, cool officer would have taken under similar circumstances. However, the action of the defendant in cutting the prosecuting witness is not to be condoned. Under the evidence the officer probably had the right to arrest him for a crime committed in his presence, and he should have submitted to that arrest in a peaceable manner. It is not for this court to pass upon the conflict in the evidence, and if the state had proved all that was required under the statute as above quoted, this judgment would not be reversed, but would be modified.

In the case of Blevins v. State, 11 Okla. Cr. 563, 149 P. 925, 926, which was a case very much like the case at bar, the court said:

"Cases of this character should ordinarily be prosecuted under section 2344, R.L. 1910" (now Oklahoma Statutes 1931, sec. 1870, 21 Okla. St. Ann. § 645). Russell v. State, 9 Okla. Cr. 692, 133 P. 475.

In the case of Clemons v. State, 8 Okla. Cr. 452, 128 P. 739, 741, the facts were very similar to the facts in this case. The court said:

"Dr. Hill and Dr. Pague testified that in their opinion death would likely have resulted from the wound if they had not treated it. * * *

"Without entering upon an analysis of the testimony, it is sufficient to say that there was no testimony offered

to show that the knife used in making the assault was a deadly weapon, except the manner and probable effect of its use."

The court further said:

"An ordinary penknife is not necessarily a deadly weapon. Brown v. State, 3 Okla. Cr. 42, 104 P. 78. A deadly weapon is one likely to produce death or great bodily harm by the use made of it, but a weapon capable of producing death is not necessarily a weapon likely to produce death. In many cases the court may declare as a matter of law that the particular weapon was or was not a deadly weapon, but where the weapon used may be a deadly weapon or not, according to the manner in which it was used or the part of the body struck, the question must be submitted to the jury. To convict of the highest degree of the offense charged in this information, it was necessary to show that the assault and battery was committed by means of a deadly weapon, and not by means of any sharp or dangerous weapon as prescribed by section 2337 [Comp. Laws 1909], 21 Okla. St. Ann. § 645. * * *

"While this court under section 6955, 22 Okla. St. Ann. § 1066, is given the power in a proper case, if necessary in the furtherance of justice, to modify a judgment so as to prevent the imposition of punishment which the evidence will not warrant (Fritz v. State, 8 Okla. Cr. [342], 128 P. 170), we do not think that that power should be exercised in this case.

"The verdict is very vague, and is too uncertain to support a judgment for the highest degree of the offense charged. Neither is it responsive to the issue under the proof which was not of assault by a deadly weapon, but an assault and battery by means and force likely to produce death with intent to kill." Brown v. State, 3 Okla. Cr. 42, 104 P. 78.

In the instant case there was not a line of proof as to the kind or character of the knife used by the defendant. No witness testified that he even saw a knife, and it was at no time introduced in evidence, nor was there any testimony that it was a deadly weapon. The

prosecuting witness' only testimony was that he knocked the knife from defendant's hand when he struck him with his "billy."

The testimony of Dr. Buchannon as to the wounds upon the prosecuting witness was:

"A. On the left arm, forearm, there was a wound approximately eight inches in length, beginning about four inches above the inner condyle of the humerus, extending downward and outward from the radial forearm. Q. Will you just show the jury where that would be? A. Beginning approximately at this point, extending downward and outward from the radial forearm. In this wound there was three of the veins of the arm and forearm severed. I don't suppose you want the name of those veins, do you? Q. No. Approximately how deep was that cut, doctor? A. Well, it was varied. On the upper portion of the cut it was through the skin, the subcutaneous tissue. As it progressed downward it became deeper, severing one of the radial muscles of the arm. That would at that angle be approximately an inch and a half in depth. Q. Go ahead as to the other wounds. A. There was a wound approximately one and a half inches in the mid-line of the upper sternal natch—upper part of the sternal; a wound in the right leg approximately three inches in length. One blood vessel was severed, and there was one small wound in the upper part of the left arm."

The only testimony of Dr. Buchannon with reference to the seriousness of the wounds was:

"Q. From your observation as a physician and from your treatment of that particular case, what have you to say as to those wounds in regard to their being of a serious nature? By Mr. Fisher: If the court please, I think that is a matter for the jury to consider. By the Court: Overruled. By Mr. Fisher: Exceptions. A. Well, I would consider them as serious wounds in regards to complications from hemorrhage and infection."

With reference to the "billy" used by the prosecuting witness, the doctor testified:

"Q. Doctor, is that such a weapon in the hands of any man that it might be used as a deadly or dangerous

weapon? By Mr. Crow: We object to that. By the Court: Overruled. By Mr. Crow: Exceptions. A. Yes."

After the verdict in this case was rendered, and the motion for a new trial was presented, a motion was presented to the trial court asking for a suspended sentence. This was in accordance with the law enacted by the Legislature in 1937. Session Laws, 1937, article 2, ch. 17, p. 20, 22 Okla. St. Ann., § 991. At the hearing, the testimony of many witnesses was given as to the good character and habits of defendant, and a petition signed by one hundred fifty residents of Blaine county, many of whom were officers and former officers and prominent citizens of that community was filed. This petition was overruled by the trial court. This was within his discretion, and this court would not attempt to interfere with that discretion. Under ordinary circumstances, we would feel that in a case of this character it would be best to lower the punishment assessed and modify the judgment, but under the circumstances presented in this case, we are of the opinion that it is best that the case be reversed and sent back to Blaine county. If the county attorney is of the opinion that it should be retried, he can do so, and a jury of that county may pass upon the merits thereof.

If defendant is retried, it would be well for the county attorney, if he deems advisable, to file an amended information as suggested in the case of Blevins v. State, supra, charging defendant under Oklahoma Statutes 1931, sec. 1870, 21 Okla. St. Ann., § 645, and the court should also charge the jury upon assault and battery, as an included offense, as was done in the instant case.

Having decided that this should be done, we will say, that if a new trial is had, the bloody clothes worn by the prosecuting witness should not be permitted to be introduced. They threw no light upon the facts, and could only have the effect of causing passion and preju-

dice to arise in the minds of the jury. There was no question as to the location of the wounds as was shown by the testimony of Doctor Buchannon.

There is also doubt as to the admission of the evidence of the former arrest of defendant by the prosecuting witness, and the testimony as to the finding of liquor on or near his person. This evidence no doubt was a strong factor with the jury in giving him the length of sentence that was assessed.

For the reasons above stated, the judgment of the district court of Blaine county is reversed and remanded.

DOYLE, P. J., and DAVENPORT, J., concur.