**Ronnie Ray ROUSE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–624.**

Court of Criminal Appeals of Oklahoma.

April 20, 1979.

Noah H. Ewing, Purcell, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Charles S. Rogers, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Ronnie Ray Rouse, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, McClain County, Case No. CRF–76–13, for the offense of Murder in the Second Degree. The defendant received an indeterminate sentence of from ten (10) years to life imprisonment. From this judgment and sentence defendant has effected a timely appeal.

The defendant was charged and convicted of the killing of his former wife's stepmother, Barbara Clark. On February 19, 1976, about 4:30 p. m., Lorri Clark and her stepmother returned to the stepmother's mobile home. When they arrived they were met by the defendant. Defendant had a .20 gauge shotgun and fired one shot into the chest of Barbara Clark. An ambulance was called and Barbara Clark was taken to the hospital. The medical examiner testified that her death was caused by the shotgun blast fired into her chest. Anthony Stokes testified that the defendant had earlier informed him that his wife had "run off" and he was going to get her; and that he would kill anyone who got in his way. Mr. Stokes testified that the remark was especially directed toward the deceased. The State introduced the testimony of thirteen witnesses to prove its case against the defendant. At the conclusion of the State's case, defendant's demurrer to the evidence was overruled, and defendant rested without offering any testimony in his defense.

Defendant's first assignment of error is that the trial court erred in not granting a new trial based on newly discovered evidence. In support of this claim, defendant's first proposition has to do with counsel's discovery of a prior commitment of the defendant to a mental institution. When presented with this information, the trial court postponed ruling on the motion for a new trial until the defendant was once again placed under observation at Central State Hospital in Norman, Oklahoma. After a period of observation, Dr. Lorraine Schmidt submitted a report reaffirming their earlier conclusion that defendant was competent to stand trial. Dr. Schmidt further stated that when defendant was held for observation shortly after the homicide the staff was fully aware of his previous mental condition and took that into consideration in returning their prior report. Defendant also objects to the fact that employees of Central State Hospital are "agents" of the State and that defense counsel was not allowed to personally pay for an independent evaluation.

We do not agree with the defendant's contention that the fact that employees of Central State Hospital are paid by the state prevented them from fairly evaluating the defendant's condition. We also do not believe that the court erred in denying counsel's offer to pay for private psychiatric

care at this late date. The defendant was found to be competent on two occasions, once prior to trial and once after trial. Under these circumstances we do not feel the court abused its discretion in denying the motion for a new trial on this ground.

■ Defendant's second proposition concerns threats made against the defendant and his family on the eve of trial. The defendant's mother testified that the deceased's husband telephoned the night before the trial was to begin and threatened defendant's life and the lives of his family if he did anything in the way of defense. Mrs. Rouse communicated these threats to the defendant and also informed Sheriff Don Smith. Defense counsel was not made aware of the threats until after the trial, and stated that he had expected the defendant to testify at trial. The defendant contends that the failure of the sheriff to inform defense counsel of the threats, in effect, denied him a fair trial and that this revelation meets the requirements for a new trial as set out in 22 O.S.1971, § 952, which reads in part as follows:

> "A court in which a trial has been had upon an issue of fact has power to grant a new trial when a verdict has been rendered against a defendant by which his substantial rights have been prejudiced, upon his application in the following cases only:
>
> * * * * * *
>
> Seventh. When new evidence is discovered, material to the defendant, and which he could not with reasonable diligence have discovered before the trial, or when it can be shown that the grand jury was not drawn summoned or impaneled as provided by law, and that the facts in relation thereto were unknown to the defendant or his attorney until after the trial jury in the case was sworn and were not of record. . . ."

The following test for granting a new trial was outlined in *Marlow v. City of Tulsa,* Okl.Cr., 564 P.2d 243, 245 (1977). It was there stated:

> ". . . The test for whether or not a trial court abuses its discretion in grant-

ing a new trial is four-fold: 1) Is the evidence material? 2) Did the accused or his counsel exercise due diligence to discover the evidence before the trial? 3) Is it cumulative? 4) Is there a reasonable probability that if the newly discovered evidence had been introduced at the trial it would have changed the results."

The evidence presented by the testimony of defendant's mother does not have any bearing on issues presented at trial, but does relate to defendant's ability to present evidence in the form of his testimony. The question necessarily arises as to whether defendant's failure to testify materially prejudiced his right to a fair trial. Counsel does not indicate that even if counsel had been aware of the threats that the defendant would have been willing to testify under those circumstances or that he would testify if a new trial were granted. There is no reason to believe, nor is there any assertion, that defendant's testimony would be any different than his written statement introduced into evidence. Also, four witnesses gave testimony as to defendant's version of the shooting. In the absence of a showing that evidence would be presented which would likely change the verdict, we do not feel the trial court erred in denying the motion for a new trial.

■ Defendant asserts in his second assignment of error that the trial court allowed introduction into evidence of a bloody garment worn by the deceased. Defendant contends that OSBI agent Carl Cloud's testimony as to location of the wound and the distance from which the shot was fired was uncontroverted and unchallenged and, therefore, no issue existed that would justify introduction of the bloody and putrid garment. The standards under which such evidence is admissible were reiterated in *Jennings v. State,* Okl.Cr., 506 P.2d 931, 935 (1973):

> "[T]he law is established that in assault cases the clothing worn by the victim at the time of the assault may be introduced within the discretion of the trial court, to connect the accused with the crime, to prove the identity of the deceased, to

show the nature of the wound, or to throw any relevant light on a material matter at issue. . . . *Owens v. State,* 93 Okl.Cr. 156, 225 P.2d 812; *Martin v. State,* 67 Okl.Cr. 390, 94 P.2d 270; and *Brewer v. State,* Okl.Cr., 414 P.2d 559. . . ."

We do not agree with the defendant's contention that no issue existed which would justify admission of the sweater. In the present case, the jury was properly instructed that expert testimony should be "given such weight and value as you deem it entitled to receive." *Peterson v. State,* Okl.Cr., 473 P.2d 293 (1970); *Sharp v. State,* Okl.Cr., 407 P.2d 593 (1965). The State's evidence indicated that the fatal shot was fired from a distance of six feet. Agent Cloud testified that his tests indicated the shot was fired at a distance of from three to six feet from the victim, thereby enforcing the testimony of Lorri Clark. The signed statement of the defendant and the testimony of State witnesses relating defendant's version of the shooting indicate the victim and the defendant would necessarily be closer than six feet. By presenting the sweater worn by the deceased, the jury was given the opportunity to determine whether in their opinion the size of the gunshot wound was consistent with the defendant's version or the State's version of the incident. We therefore believe the court was correct in admitting the deceased's sweater.

The defendant further contends that the prosecutor attempted to prejudice the defendant by eliciting inflammatory testimony. The following exchange occurred at trial:

"Q. [BY MR. McCOY] What did you do then after you answered the phone?

"A. I talked with Mrs. Rouse. She wanted to know if Ronnie was there.

"Q. No, after you answered the phone?

"BY MR. EWING: Objection, Your Honor, once again he's eliciting hearsay. I don't understand why.

"BY THE COURT: All right, go ahead. I don't think there's anything in there that's prejudicial there.

"Q. [BY MR. McCOY] After you answered the phone.

"A. Okay, I tried to talk and I couldn't talk with Mrs. Rouse. I looked out the window and they had a Doberman Pincer (sic) dog and it had started to lick Bobbie's hand, she had blood on her hand and the dog had come up. I put the phone down, I didn't get to finish talking.

"BY MR. WILSON: Object to that for the purpose of trying to create sympathy ___

"A. It's the truth.

"BY THE COURT: Just a second, please.

"BY MR. WILSON: ___For the deceased and prejudice against the defendant. There's no issue in this case at all as to that.

"BY THE COURT: It was just a spontaneous remark made by the witness and the court will overrule the objection, but I will admonish counsel not to proceed further on that particular line.

"Q. [BY MR. McCOY] What did you do then after you were through with the phone call? That's what I'm getting at."

We do not believe this record supports the defendant's contention that the State purposefully elicited an inflammatory statement. It must, however, be determined whether the remark prejudiced the defendant. In *Gonzales v. State,* Okl.Cr., 388 P.2d 312, 319 (1964), this Court stated:

"It has repeatedly been held that before this Court can reverse a conviction upon the ground that the trial court erred in the admission or rejection of evidence, or its instructions to the jury, it must first find from an inspection of the entire record that appellant was injured thereby, and to determine the question of appellant's guilt or innocence of the offense charged. . . ." [Citations omitted]

In *Kennedy v. State,* Okl.Cr., 528 P.2d 317, 325 (1974), it was asserted that the witness' response that she had been promised "protection to keep from getting killed" was an "evidentiary harpoon." This Court stated:

". . . We find, in reviewing the record, that the response was not elicited by

the State as an 'evidentiary harpoon' as contended by the defense, but rather was an answer to a question designed to establish that no prosecutive arrangements had been entered into by the parties." In the present case, the record does not support defendant's contention that the State purposefully sought to elicit an inflammatory response from the witness. We feel the better procedure would have been for the trial court to have sustained defense counsel's objection to the remark of the witness, but after a review of the record we cannot say that the defendant suffered injury requiring reversal.

■ Defendant asserts as his third assignment of error certain testimony elicited from expert witness, Dr. Fred Jordan. As outlined in the statement of facts, Dr. Jordan was first asked to give his opinion as to the position of the weapon on cross-examination. The State on redirect, then posed a question based on the facts presented in the case, to which the doctor replied that under those facts the position of the assailant and the victim would not be inconsistent with the deceased's wound. On re-cross, Dr. Jordan stated that many more factors would have to be considered to give a truly accurate answer and that his answer to the question was only as good as the facts it was based on. As the record indicates, Dr. Jordan did not testify regarding his opinion as to the location of the parties involved, but only responded to a question propounded by the State. We feel that under these circumstances if it were error for Dr. Jordan to respond to the State's question, it was invited error. *Kelly v. State*, Okl.Cr., 415 P.2d 187 (1966). We further note that Dr. Jordan repeatedly stated that many factors were involved in answering such a question accurately and that his expertise was only in relating the path of the gunshot after impact.

■ Defendant asserts failure to instruct on self-defense as his fourth assignment of error. He contends that his handwritten statement, introduced by the State, raised the issue of self-defense. We first note that the only objection to instructions was a

notation on Instruction No. 7, concerning accident. We find no fault in this instruction and believe it was properly given. We can find no indication of record that defense counsel properly submitted a request for an instruction on self-defense. In *Crabtree v. State*, Okl.Cr., 339 P.2d 1066, 1074 (1958), this Court stated:

"[I]t was the duty of counsel for the defendant, if he was of the opinion that additional instructions should have been given to have reduced them to writing, and request that they be given. . . . But where counsel failed to submit an instruction or by some manner emphasize his idea of defense, the conviction may not be reversed unless the appellate court is of the opinion, in light of the entire record and instructions of the court actually given, that the record imperatively required the instruction complained of and that such failure deprived defendant of a substantial right."

See also, *Holloway v. State*, Okl.Cr., 550 P.2d 1352 (1976); *Bryant v. State*, Okl.Cr., 521 P.2d 402 (1974). The trial court instructed on Murder in the Second Degree, Manslaughter in the First Degree, and Accident. The jury found defendant guilty of Murder in the Second Degree. After a review of the entire record, we do not believe the defendant was deprived of a substantial right and, therefore, conclude this assignment of error is without merit.

■ Defendant contends, in his final assignment of error, that the court erred in limiting cross-examination of State witness Lorri Clark. The questions to which the court sustained the State's objections dealt with the witness' association with drug users and pushers. Defendant contends he should have been allowed to delve into this area to counteract the "little-bo-peep" image of the witness at trial. It is a well established rule that it is improper to attempt to impeach a witness by questions directed to moral character. The scope of impeachment is limited to the reputation of a witness for truth and veracity, and the trial court ruled properly in sustaining the State's objection. *Carpenter v. State*, Okl.

Cr., 530 P.2d 1049 (1975); *Riddle v. State,* 92 Okl.Cr. 397, 223 P.2d 379 (1950). Defendant asserts that this area was opened by a note introduced into evidence by the State. The note, however, was introduced into evidence after Lorri Clark had testified and during the testimony of Sheriff Don Smith. At that time the State read the note into the record, and the jury had the benefit of hearing the references to drugs contained therein. Defense counsel then questioned Sheriff Smith as to his knowledge of drug related activities of those parties mentioned in the note. In view of these facts and after reviewing the authority cited by defendant, we find that the trial court did not err in its ruling.

Based upon the foregoing resolution of the issues presented, we find the judgment of Murder in the Second Degree should not be disturbed. Accordingly, the judgment and sentence is *AFFIRMED.*

CORNISH, P. J., and BUSSEY, J., concur.