Ronald B. KLINEKOLE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–144.

Court of Criminal Appeals of Oklahoma.

Aug. 9, 1985.

Rehearing Denied Sept. 6, 1985.

**8.** See *United States v. Carmack,* 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946).

Mark Barrett, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Ronald B. Klinekole, was convicted of Burglary in the First Degree and Rape in the First Degree After Former Conviction of Two or More Felonies in the District Court of Caddo County in Case No. CRF–82–148. Appellant was sentenced to thirty-five (35) and eighty (80) years imprisonment, respectively, and he appeals. We affirm.

On July 2, 1982, the prosecutrix, who was sleeping on a mattress in the living room of her house, was awakened when she was struck at least three (3) times in the face with a tire tool. The prosecutrix began to kick and scream and asked the appellant not to hit her anymore. The appellant responded by telling her to be quiet and ordered her to cover her face with the sheet and remove her panties. She complied and appellant engaged in sexual intercourse and anal intercourse with the prosecutrix. The prosecutrix testified that she was in fear for her life.

During the incident, the prosecutrix asked the appellant several questions and she learned that appellant had family in town and that he had been drinking. When the prosecutrix asked appellant, "Why didn't you just ask me?" appellant replied "I did." (One week earlier a man with similar physical appearance had asked the prosecutrix for a date, but she declined). After talking with the prosecutrix, the appellant ordered her to place her face in the mattress and not look up, and he departed. The prosecutrix waited for a few moments and then she got her child and went to her boyfriend's house. He transported her to the hospital where she was treated for fractures of the jaw, bruises, and cuts and hospitalized for a week.

The prosecutrix gave a description of the assailant to the police while she was in the

emergency room. She was able to observe some of the attacker's physical characteristics and the way he was dressed due to a street light that shone through her living room window. She described her attacker as having long hair, medium build, medium height, a beard, appearing to be intoxicated, wearing overalls with no shirt, and tennis shoes and appearing to be of Mexican or Indian descent. Tennis shoe tracks were observed at the prosecutrix' residence.

After she described her attacker to a police officer, the officer remembered a man he had previously interviewed concerning an unrelated incident who at that time was working on a residence directly behind the victim's residence. A few hours after the attack the officer observed appellant attired exactly as the victim had described, with blood spatters on the front of his overalls and appearing to be intoxicated. After appellant was ordered to get out of his car, the officer observed a tire tool with blood on it in plain view inside the car. Subsequently, human blood type "A" was found on the tire tool, on the tennis shoes and on the front of the overalls. (The victim's blood type is type "A".) Additionally, hairs found on the victim's sheets and semen removed from her vaginal and anal cavities were consistent with samples taken from appellant. Approximately one week after the attack the prosecutrix positively identified appellant in a photographic lineup and later identified appellant at the preliminary hearing and at trial.

## I

In his first assignment of error, the appellant contends that the trial court committed reversible error, under Oklahoma Law and under the Due Process Clause of the United States Constitution's Fourteenth Amendment, in refusing to suppress the prosecutrix' tainted and unreliable identification testimony. We disagree.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) the United States Supreme Court set forth the factors which are to be considered in deter-mining whether an identification is reliable: 1) opportunity of the witness to view the person in question; 2) the witness' degree of attention; 3) the accuracy of prior description; 4) the level of certainty demonstrated at the confrontation; and 5) the length of time between the crime and the confrontation.

In the instant case, the prosecutrix testified that there was a light shining in the living room window from the street light from which she determined that the assailant had long hair, a long nose, medium build, a full beard, that he was wearing overalls with no shirt and tennis shoes, that he appeared to be of Mexican or Indian descent, that he appeared to be intoxicated, and that he was approximately the same height as her. The arresting officer testified that a few hours after the attack, based upon the victim's description, he arrested the appellant who was attired consistent with the victim's description and had the same physical characteristics. The victim testified that during the assault she gave special attention to determining the attacker's height and physical characteristics and that she asked him several questions intended to acquire information as to his identity. Even though the victim stated to the police officer that she could not identify the assailant, she positively identified him in a photographic lineup approximately one (1) week after the attack; she identified appellant at the preliminary hearing; and she positively identified appellant at trial. Under *Manson,* supra, there is ample evidence in the record to support the independent reliability of the in-court identification. This assignment of error is without merit.

## II

As his second assignment of error, the appellant contends that reversal is required because law enforcement officers impermissibly lost or destroyed the photographic lineup and deprived the appellant of his right to demonstrate conclusively on appeal that the lineup was impermissibly suggestive.

However, having found that the in-court identification was independently reliable under the totality of the circumstances, we do not need to consider whether the pretrial confrontation procedure was suggestive. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). This assignment of error is without merit.

### III

In his third assignment of error, the appellant complains that because of various doubts clouding the identity issue in appellant's case, the trial court committed fundamental error in failing to deliver a cautionary instruction on eye-witness identification.

█ Initially, we note that appellant failed to request a cautionary instruction on eyewitness identification. Failure to request an instruction results in waiver of all error on appellate review except fundamental error. *Luckey v. State,* 529 P.2d 994 (Okl.Cr.1974). Finding no fundamental error, the trial court's failure to so instruct the jury does not constitute reversible error.

Moreover, in *Richardson v. State,* 600 P.2d 361 (Okl.Cr.1979), this Court held that:

> [A] cautionary instruction should be given where the witness lacked opportunity to observe the assailant, or where the witness was not positive in his identification, or where the identification was weakened by either qualification or by a failure to identify the defendant on a prior occasion.

Since the prosecutrix had ample opportunity to observe appellant, was positive in her identification at trial, and never failed to identify appellant on a prior occasion, we find that no cautionary instruction on the witness' identification of the appellant was required. This assignment of error is without merit.

### IV

In his fourth assignment of error, appellant argues that the trial judge committed reversible error, under Oklahoma law and the fourth and fourteenth amendments to the United States Constitution, in refusing to suppress evidence including the identification evidence, which was the product of an illegal arrest. We disagree.

█ The test of whether a police officer has probable cause to make a warrantless arrest is whether, at the moment the arrest was made, the facts and circumstances, within his knowledge, and of which he had reasonable trustworthy information, were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense. *Backus v. State,* 635 P.2d 1021 (Okl.Cr. 1981). We are of the opinion that this test has been met in the instant case.

The police officer, who had obtained a detailed description of the attacker from the victim a few hours after the attack, remembered a man he had interviewed a few days before who met the description. The officer located the appellant, and while conducting an investigatory stop based upon these articulable facts, he observed that appellant was attired consistent with the victim's statement and had the same physical characteristics. He further observed blood stains on appellant's overalls and tennis shoes and observed a tire tool with blood on it in plain view in appellant's vehicle. Based upon these facts, the officer had probable cause to believe that the appellant had committed the felonies. This assignment of error is without merit.

### V

As his fifth assignment of error, the appellant maintains that the prosecution presented insufficient evidence to support the convictions because the prosecutrix' inherently unreliable testimony was not supported by adequate corroboration.

█ We find this assertion to be patently frivolous. The prosecutrix' testimony was not only worthy of credence but was corroborated by ample evidence. She had injuries that were consistent with her account of the attack, and seminal fluids were found in her vaginal and anal cavities.

Appellant was arrested by the police a few hours after the attack attired exactly as the prosecutrix had described with blood spatters on his overalls and a bloody tire tool in his vehicle. Moreover, this Court has consistently held that a conviction for rape may be based upon the uncorroborated testimony of the prosecutrix where her testimony is not inherently improbable or unworthy of credence. See, *Lee v. State,* 485 P.2d 482 (Okl.Cr.1971). This assignment of error is without merit.

## VI

In his sixth assignment of error, the appellant contends that improper prosecutorial commentary deprived him of a fair trial and caused the jury to impose extremely harsh punishment.

■ Appellant asserts that several comments by the prosecution were improper; however, only three (3) of these comments were objected to at trial and at no time did appellant ask the trial court to admonish the jury to disregard the improper comments. Accordingly, the error was not preserved for appellate review, and in light of the overwhelming evidence of appellant's guilt, we are unable to conclude that "their combined effect was so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings and mandate a new trial." *Freeman v. State,* 681 P.2d 84 (Okl.Cr.1984); See also, *Hickman v. State,* 626 P.2d 873 (Okl.Cr.1981).

## VII

In his seventh assignment of error, the appellant alleges that the trial court improperly allowed admission of a non-probative blood-stained shirt into evidence. We disagree.

In *Noah v. State,* 562 P.2d 950 (Okl.Cr. 1977), we reaffirmed the test as set forth in *Martin v. State,* 67 Okl.Cr. 390, 94 P.2d 270 (1939):

> It is permissible to introduce the bloody clothing when their introduction serves to illustrate some point or solve some questions or throw light upon some mat-

ter connected with the proper solution of the case.

Furthermore, we held in *Brewer v. State,* 414 P.2d 559 (Okl.Cr.1966) that:

> Such evidence is admissible, within the discretion of the trial court, to connect the accused with the crime, to prove the identity of the deceased, to show the nature of the wound, or to throw any relevant light on a material matter at issue.

■ In the instant case, the blood-stained shirt is demonstrative evidence which corroborates the prosecutrix' account of the attack and sheds additional light on the nature and extent of her injuries. Moreover, the final decision on the admissibility of any evidence is left within the sound discretion of the trial court, and absent a clear showing of abuse and resulting prejudice, this Court will not interfere with the trial court's ruling. *Marshall v. State,* 620 P.2d 443 (Okl.Cr.1980).

Finding no abuse of discretion, this assignment of error is without merit.

## VIII

As his eighth assignment of error, the appellant complains that the failure of voir dire to be included in the record on appeal requires reversal under Oklahoma Law, under the Due Process Clause of the Federal Constitution's Fourteenth Amendment, and under the Sixth Amendment guarantee of effective assistance of counsel. Although appellant acknowledges that the alleged error during voir dire was waived by failure to object, he now asserts that counsel's waiver and failure to request voir dire in his Designation of Record gives rise to ineffective assistance of counsel. We disagree.

■ Recently, in *Harrall v. State,* 674 P.2d 581 (Okl.Cr.1984), we addressed a similar issue and held that:

> Anticipating our ruling on the issues not properly preserved for review, appellant urges ineffective assistance of counsel in that connection. This is an argument encountered by this Court with in-

creasing frequency. Limits must be noted, for, unchecked, such an argument permits the easy circumvention of the rules for the effective conduct of criminal litigation. *Bottiglio v. United States*, 431 F.2d 930 (1st Cir.1970). The issue is whether the accused was afforded reasonably competent assistance of counsel, i.e., whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney, *Johnson v. State*, 620 P.2d 1311 (Okl.Cr. 1981), assessed in light of counsel's overall performance. *Taylor v. State*, 659 P.2d 362 (Okl.Cr.1983). The mere presence of unobjected error is therefore not decisive.

In the instant case, defense counsel stated that he purposely failed to object to the alleged erroneous comments during voir dire.[1] We will not question defense counsel's viable trial strategy with the benefit of hindsight. *Johnson v. State*, 620 P.2d 1311 (Okl.Cr.1981). Whether the accused is afforded reasonably competent assistance of counsel is to be assessed in light of counsel's overall performance. *Taylor v. State*, 659 P.2d 362 (Okl.Cr.1983).

■■■ We cannot find a lack of reasonable competence based solely upon the isolation of one alleged error. This assignment of error is without merit.

### IX

In his ninth assignment of error, appellant contends that the trial court committed reversible error in refusing to allow appellant a continuance so that he could produce persuasive evidence that the blood on and near him at the time of the arrest was the result of a fight with another man and not as a result of any contact with the prosecutrix.

However, the appellant failed to comply with the statutory requirements set forth

in 12 O.S.1981, § 668, which provide in pertinent part:

A motion for continuance, on account of the absence of evidence, can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true.

■■ In the instant case, appellant failed to submit an affidavit, and attempted to subpoena the prospective witness who lived in Apache, Oklahoma, only two (2) days before trial although he had almost two (2) months to prepare for trial. Additionally, appellant waited to request a continuance until the State had rested and the appellant had presented a portion of his case notwithstanding the fact that appellant was aware before trial that the prospective witness was away from his residence. Certainly, appellant has failed to illustrate good faith and due diligence as required by 12 O.S. 1981, § 668, supra. This assignment of error is without merit.

### X

As his tenth assignment of error, the appellant maintains that the admission of evidence concerning hair testing constituted reversible error because the State failed to meet its burden of showing that the clothing and samples in question were preserved adequately so as to make the results of the test meaningful. Appellant asserts that the State failed to produce any evidence that the overalls and the sheet from which hair samples were removed were kept separate from each other, thus,

---

1. The transcript reads in pertinent part as follows:

> Judge, if the remarks are going as to Mr. Burns' comments about the credibility of the witness if he would take the stand, that objection was not an oversight on my part; it was purposely not made. I may live to regret it but I—at this point, I saw no real harm or prejudice done to the defendant at that time, and therefore failed to make the comment. (Tr. 225).

failing to meet its burden of showing that the evidence was properly collected and maintained.

The testimony at trial concerning the chain of custody of the overalls and the sheet was that the police officer delivered them to the OSBI laboratory in Oklahoma City to a criminologist in the same condition that they were in when he received them.

■ In *Hauschildt v. State*, 554 P.2d 77, 80 (Okl.Cr.1976) this Court stated that:

It is plain that the party who offers the demonstrative evidence must show to the satisfaction of the trial judge that the circumstances of its custody provide reasonable certainty that there has been no alteration of or tampering with that evidence. We have made clear, however, that this burden is not so absolute that all possibility of alteration, however slight, must be negated by the party offering the evidence. Once it is shown to the court that the evidence was preserved under circumstances reasonably certain to maintain its integrity, it is proper for the trial judge to admit the evidence and let what doubt there may be go to its weight.

Accordingly, we are of the opinion that the evidence was properly admitted. This assignment of error is without merit.

### XI

■ In his eleventh and final assignment of error, the appellant argues that the trial court committed fundamental error when it failed to give the jury the option of finding that appellant had incurred one previous felony conviction. In support of this contention appellant relies upon *Dean v. State*, 502 P.2d 358 (Okl.Cr. 1972). This assignment of error is patently frivolous. In *Dean*, the defendant, in the second phase of the trial, "requested a verdict form by which the jury might fix the punishment for second degree burglary," but "the court refused and provided the jury only with the form by which they could fix punishment as an habitual criminal." *Id.* at 359. In the instant case, on the other hand, the appellant failed to request an instruction in the second stage of the trial concerning his previous felony convictions. In *Mathes v. State*, 552 P.2d 415 (Okl.Cr.1976), this Court held that:

In addition to the fact that defense counsel failed to offer instructions to the court, we emphasize the fact that there was no timely objection made to the instructions given by the court ... considering the fact there was no objection to the instructions in the second stage of the proceeding, such can also be deemed to have been waived.

This assignment of error is without merit.

For the above and foregoing reasons, the judgment and sentence appealed from is AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

I dissent. The evidence in this case unquestionably establishes that a burglary and rape occurred in the early morning hours of July 2, 1982. P.C., the victim, was awakened by blows from a tiretool or crowbar. After this initial struggle, P.C. was raped and anally sodomized. Police later established P.C.'s assailant entered the house through a bedroom window. Physical evidence introduced at trial did not eliminate appellant as a suspect, but was inconclusive regarding the identity of P.C.'s assailant. The only issue disputed by the litigants involved the identity of P.C.'s assailant.

Based on the victim's description of her attacker and her description of a car driven by a man who asked her for a date one week earlier, whom P.C. initially believed was the same man as her assailant, Anadarko police arrested appellant. P.C. first identified appellant in a photographic lineup, and, later, at both the preliminary hearing and trial.

The defense introduced testimony purporting to show that blood found on the

tire tool was the result of appellant's fight with a third party. Another defense witness testified he was the person who asked P.C. for a date one week before the crime.

I would reverse and remand this case for a new trial based on appellant's first and second assignments of error, which involve a challenge to the victim's in-court identification. Appellant argues that the photographic line-up was unnecessarily suggestive, and created a likelihood of irreparably mistaken identification. Based on the unique circumstances surrounding this issue, I agree the admission of this identification testimony denied appellant due process of law, and accordingly dissent from the majority opinion.

The United States Supreme Court has held that "convictions based on eyewitness identification by photograph will be set aside [on due process grounds] if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). *See also Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Subsequent to *Simmons*, the Supreme Court explained that this test involves the evaluation of two independent factors: (1) whether the circumstances of the pre-trial confrontation were "unnecessarily suggestive," and (2) whether the identification was nevertheless sufficiently reliable so as to diminish the significance of the suggestive procedures. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). *See also Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *Accord Gregg v. State*, 662 P.2d 1385 (Okl.Cr.1983).

Turning to the facts of this case under the first prong of the *Manson v. Brathwaite* test, the normal procedure would be a review of the photographs to determine whether the line-up was unnecessarily suggestive. However, in this case, the photographs are not part of the record because the Anadarko police department lost or destroyed the photographic array. Defense counsel had requested a copy of the line-up, but the prosecutor failed to provide him with one. As a result, the photographs are not available for this Court to review.

In a similar situation, one in which an affidavit and search warrant were missing from the record, we held:

It seems to be well established, as a general rule, that where a defendant has done all that the law requires in perfecting his appeal, and where the record necessary for review of the case is lost or destroyed while in the custody of an officer of the court, in order to prevent a possible miscarriage of justice by depriving the defendant of his legal right to appeal, a new trial will be granted.

*Hixon v. State*, 456 P.2d 117, 118 Okl.Cr. 69, citing *Bailey v. United States*, 3 Okl.Cr. 175, 104 P. 917 (1909).

In this case, the defense not only discussed the photographic line-up in its motion for new trial and designation of record on appeal, but also requested copies of this exhibit during trial proceedings. The appellant has done all the law requires in perfecting this appeal, and now, through no fault of his own, the exhibit forming the central issue is missing. Because this error only goes to one prong of the *Manson v. Brathwaite* test, this case should not be reversed solely on this basis. However, I, for one, am compelled to give appellant the benefit of the doubt[1] regarding this issue.

Turning to the reliability prong of the *Manson v. Brathwaite* formulation. I cannot agree with Judge Bussey's conclusion that the identification by P.C. was otherwise independently reliable under the facts of this case. The reliability of identification is such that admission of the in-court

---

**1.** Statements exist in the transcript which are sufficient to raise at least a doubt in the appellant's favor regarding the suggestibility of the photographic array. Immediately following the assault, P.C. described her attacker as having a full beard that "went all the way around his face." There is an indication that appellant was the only person in the photographs with a full beard.

identification should not be allowed to stand, absent a showing that the photographic line-up was not unnecessarily suggestive. In *Neil v. Biggers, supra,* the Supreme Court established factors to be considered in determining the reliability of the identification testimony. In *Manson v. Brathwaite,* the Court summarized the factors as including "the opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* 432 U.S. at 114, 97 S.Ct. at 2253. *See also Reaves v. State,* 649 P.2d 777, 780 (Okl.Cr.1982).

P.C.'s opportunity to view her assailant at the time of the attack was poor. She testified at preliminary hearing that "there was no light on in the house. I had to go by the way his face felt when he was lying there, and by the shadow that was on him ...". Although she testified at trial some light was available from a street lamp outside the living room window, she also recalled telling police immediately after the attack that she did not know what her assailant's face looked like and could not recognize him.

P.C.'s level of attention was obviously quite high, and she was not a mere casual observer to the violent happenings in her home that night. *But See,* Loftus, *Eyewitness Testimony,* 33–36, 151, 153–156, 171–174, 214 (1979) (persuasively arguing based on psychological data, that a victim under stress is *less likely* to make an accurate identification). Conversely, her description of the attacker's voice was inconsistent with descriptions by the arresting officer. Furthermore, the actual description of the assailant's characteristics were given in general terms, and it is difficult, without appellant's photograph, to reach any definite conclusion regarding the accuracy of the description.

Turning to the final two factors, the record shows P.C.'s certainty of identification strayed at times. P.C. stated unequivocally prior to trial that appellant was the same man who asked her for a date about a week prior to the attack. At trial, P.C. testified she was unsure if appellant was the same man. Although P.C. apparently identified appellant's photograph with certainty, a tape recording made at the line-up was not preserved, and the statements were not transcribed before the tape was destroyed. Finally, the amount of time between the incident and the photographic identification was only one week.

Based on the witness' poor opportunity to view her assailant at the time of the crime, her uncertainty of identification before the photographic line-up, and her waivering level of certainty even after the photographic confrontation, it cannot be said, in my opinion, that the in-court identification was independently reliable.

I regret that this procedure creates the appearance that the victim, rather than the appellant, is "on trial," so to speak. Had the photographs been properly preserved and included in the appellate record, a different result might have been reached, and I would readily concur in the majority opinion. Yet, under these circumstances, failure to include the challenged photographs in this record, together with the serious questions regarding the reliability of the identification, compels me to dissent.